## J. N. FOX v. NELS NELSON.

(153 N. W. 395.)

**Redemption — subsequent lien holder — mortgage — foreclosure — remedial — benefit of creditors — to prevent sacrifice of debtor's property.**

1. Sections 7755 and 7756, Compiled Laws of 1913, which relate to the redemption by subsequent lien holders from the foreclosure of mortgages, are remedial in their nature, and are intended not only for the benefit of the creditors holding a lien subsequent to the lien in process of foreclosure, but also to make the property of the debtor pay as many of his debts as it can be made to pay, and to prevent its sacrifice.

Subsequent lienor — redemption — notice of — duplicate filed with register of deeds — other lien — notice of claim to — filing of — further redemption — not required to pay other lien without notice.

2. Where a subsequent lienor redeems from a mortgage under §§ 7755 and 7756, Compiled Laws of 1913, and fails to file a duplicate of his notice of redemption with the register of deeds of the county, and a notice of another lien which he may happen to have against the property, as prescribed by § 7756, Compiled Laws of 1913, a person having a still subsequent mortgage or lien may redeem from such prior redemptioner within sixty days after the period of one year has elapsed since the foreclosure, and without the payment of the other lien so claimed by the prior redemptioner.

Opinion filed April 27, 1915.    Rehearing denied June 3, 1915.

Appeal from the District Court of Renville County, *Leighton,* J.

Action of subsequent lien holder to redeem from the redemption of a lien holder.    Judgment for defendant.    Plaintiff appeals.

Reversed.

Statement of facts by BRUCE, J.

This is an action to redeem real estate from a mortgage sale which was made on the 29th day of July, 1911, and from the defendant, as a redemptioner, who redeemed from such sale on or about the 10th day of June, 1912.    It appears that the title to the land was originally in E. W. Mattern, and that on the 8th day of November, 1906, Mattern and his wife mortgaged the land in question to one E. A. Thayer for $1,200; that this mortgage was assigned to Mary M. Brackett, and was foreclosed by the said Mary M. Brackett, and a sheriff's certificate delivered to her on the 29th day of July, 1911; that prior thereto, and on the 10th day of January, 1908, the said Mattern and his wife executed another mortgage to Simmons & Bodmer for $418, and on the 25th day of August, 1908, still another mortgage for $1,926.34 to the Advance Thresher Company, a corporation; that later, and on the 11th day of June, 1912, the Simmons & Bodmer mortgage was assigned to the defendant, Nels Nelson, and later, on the 25th day of July, 1912, the Advance Thresher Company mortgage was assigned to him also.

As the owner of the Simmons & Bodmer second mortgage, the defendant, Nels Nelson, irregularly redeemed from the foreclosure of

the 29th of July, 1911, on the 10th day of June, 1912, at which time the record title to the land was in the plaintiff, J. N. Fox, by virtue of a quitclaim deed to the said Fox which was given by the original owner, Mattern and his wife, on the 30th day of January, 1912, and during the year of redemption. No duplicate of the notice of such redemption was filed with the register of deeds of the county, as is required by § 7142, Rev. Codes, 1905, § 7756, Compiled Laws of 1913; nor was any notice filed of the taxes and liens which were paid or acquired by the redemptioner, that is to say, of the Advance Thresher Company mortgage. There is also much dispute in the testimony as to whether at this time this later mortgage had not been fully paid. Later, and on the 10th day of September, 1912, the plaintiff and appellant, J. N. Fox, the grantee in the quitclaim deed before mentioned, sought to redeem from the defendant, Nels Nelson, claiming such deed to be in fact a mortgage, and tendering the said Nelson the sum of $2,300 in currency, which was the amount of the Thayer mortgage with interest and the Simmons & Bodmer mortgage with interest. The said Fox also delivered to the sheriff at such time his notice of redemption, and filed a duplicate thereof with the register of deeds. This tender, however, did not include the amount of the Advance Thresher Company mortgage, which Nelson had bought in subsequent to his redemption. The defendant, Nelson, refused to accept such tender, assigning as his sole reason for such refusal that the amount tendered did not include the Advance Thresher Company mortgage. The record is silent as to whether the notice of redemption was served upon the sheriff, except that it is drawn as a notice both to that officer and to Nelson, the redemptioner, and no question was raised by Nelson on the redemption sought to be made from him as to the method or manner of redemption, if defective. Counsel also have taken it for granted on this appeal that, in so far as the manner of redemption was concerned, it was in accordance with the statute, as the brief of appellant so states it to have been, and the brief of respondent does not contradict the fact of the legality of the redemption, except that it was too late and made by a party not a qualified redemptioner, and that it did not include the Advance Thresher Company mortgage. On the 12th day of December, 1912, the plaintiff commenced this action, which the trial court adjudged should be dismissed, and from

which judgment the plaintiff has appealed and has asked for a trial *de novo.*

*Grace & Bryans,* for appellant.

A party having an equitable mortgage in form of an absolute conveyance of land may redeem as a creditor having a lien, without having first a judicial determination of the conveyance or transfer into mortgage. Rev. Codes 1905, §§ 7139, 7753, Comp. Laws 1913; Scheibel v. Anderson, 77 Minn. 54, 77 Am. St. Rep. 664, 79 N. W. 594; Leland v. Morrison, 92 S. C. 501, 75 S. E. 889, Ann. Cas. 1914B, 349; Murphy v. Murphy, 141 Cal. 471, 75 Pac. 60; 27 Cyc. 1847, 1861; Horn v. Indianapolis Nat. Bank, 21 Am. St. Rep. 247, note; Spackman v. Gross, 25 S. D. 244, 126 N. W. 389.

The time of redemption right begins to run from the date of the filing of the prior notice of redemption in the office of the register of deeds. A further redemptioner may redeem at any time within sixty days from filing of such notice. Brady v. Gilman, 96 Minn. 234, 1 L.R.A.(N.S.) 835, 113 Am. St. Rep. 622, 104 N. W. 897; Wilson v. Hayes, 40 Minn. 531, 4 L.R.A. 196, 12 Am. St. Rep. 754, 42 N. W. 467; Tincom v. Lewis, 21 Minn. 132; 27 Cyc. 1833.

Redemption statutes are liberally construed. 27 Cyc. 1800; North Dakota Horse & Cattle Co. v. Serumgard, 17 N. D. 466, 29 L.R.A. (N.S.) 508, 138 Am. St. Rep. 717, 117 N. W. 453.

A person contesting the right of redemption in another must show that he is prejudiced or injured in some manner, or redemption will be allowed. Styles v. Dickey, 22 N. D. 515, 134 N. W. 702.

*L. F. Clausen,* for respondent.

Plaintiff, by his representations to the defendant in regard to his deed and his interest in said land, and not placing on record any instrument showing what he now claims to be his interest therein, misled defendant, and he is estopped to claim that his deed was really a mortgage. 27 Cyc. 1024; 16 Cyc. 722, 785.

The failure of defendant to file notice of redemption in the office of the register of deeds is a mere irregularity, advantage of which can be taken only by a redemptioner. Wilson v. Hayes, 40 Minn. 531, 4 L.R.A. 196, 12 Am. St. Rep. 754, 42 N. W. 467.

Actual notice takes the place of the record notice, and plaintiff had

such actual notice. N. D. Codes 1905, § 5042, Comp. Laws 1913, § 5598; McGhee v. Wells, 57 S. C. 280, 76 Am. St. Rep. 567, 35 S. E. 529; 10 Current Law, 1024.

No objection to the redemption can be made by a third person whose own right of redemption has been lost, or who does not attempt to redeem himself within proper time. 27 Cyc. 1835; Stocker v. Puckett, 17 S. D. 267, 96 N. W. 91.

BRUCE, J. (after stating the facts as above). The questions to be determined in this case are: (1) Whether the quitclaim deed from E. W. Mattern and wife was in fact a mortgage; (2) if so, whether one who accepts a quitclaim deed can, for the purpose of redemption, claim it to be a mortgage; (3) whether the defendant had slept on his rights and was precluded from redeeming; (4) whether the failure of the defendant to file a notice of redemption, as provided in § 7142, Rev. Codes 1905, § 7756, Compiled Laws of 1913, extended the time in which the plaintiff, or a second redemptioner, was entitled to redeem beyond the year of the time of redemption, if the plaintiff occupied the position of a redemptioner instead of an owner; (5) whether, under the proof, the Advance Thresher Company mortgage, purchased by the defendant subsequent to his redemption, had not been paid prior to such purchase by the original mortgagor, Mattern; (6) whether, by failing to file the notice of the assignment of the Advance Thresher Company mortgage to him, the defendant did not forfeit his right to demand the payment thereof at the time of the attempted redemption by the plaintiff.

We must start with the promise that the North Dakota redemption statute "is remedial in its nature, and is intended, not only for the benefit of creditors holding liens subsequent to a lien in process of foreclosure, but more particularly for the purpose of making the property of the debtor pay as many of his debts as it can be made to pay, and to prevent its sacrifice, and should be liberally construed." North Dakota Horse & Cattle Co. v. Serumgard, 17 N. D. 466, 29 L.R.A. (N.S.) 508, 138 Am. St. Rep. 717, 117 N. W. 453; 27 Cyc. 1800. Also that mortgaged real estate which is transferred to a subsequent purchaser with recorded notice of encumbrances becomes "in equity a primary fund for the payment of the mortgage debt." Colonial &

30 N. D.—38.

U. S. Mortg. Co. v. Flemington, 14 N. D. 181, 116 Am. St. Rep. 670, 103 N. W. 929; Paine v. Dodds, 14 N. D. 189, 116 Am. St. Rep. 674, 103 N. W. 931.

The rule has now become an established rule of property in this state, and should not be abrogated by this court. It cannot be claimed to be other than just and equitable. The decisions of this court are both retroactive and prospective in their nature, and any alteration or change of the rule on our part might greatly endanger titles and legitimate property interests. Such being the case, and, as the plaintiff, Fox, was in fact a lien holder and entitled to the rights of such, this right included the statutory right of redemption from a prior redemptioner within sixty days, even though this period extended beyond a year from the time of the original foreclosure. We say this because it is undisputed that the quitclaim deed in this case was in fact a mortgage, and the law seems to be well established that the rights of the holder of a deed which is in fact a mortgage are as far as the right to redeem is concerned, the same as if the instrument under which he claims were in express terms a mortgage, and that no prior adjudication of such fact is necessary. Scheibel v. Anderson, 77 Minn. 54, 77 Am. St. Rep. 664, 79 N. W. 594.

We must remember that the statute in regard to redemptions is not only for the benefit of the lien holder, but also for the benefit of the mortgagor, and that the policy of the law and of the statute seems to be to give every encouragement to subsequent lien holders to redeem, and this as much for the benefit of the debtor as of the lien holder. Under the provisions of §§ 7755 and 7756 of the Compiled Laws of 1913, §§ 7141 and 7142, Rev. Codes 1905, the plaintiff was not required to redeem from the defendant, Nelson, within the year, since Nelson had not within said yearly period perfected his redemption by filing the duplicate notice thereof with the register of deeds, as required by § 7756 of the Compiled Laws of 1913.

"The notice to be filed by a redemptioner," says the supreme court of South Dakota in construing a similar statute, "is for the benefit of the person filing it, as its filing is the *beginning of a brief period of limitation* of which he may take advantage as against other redemptioners. But under this statute the redemption and the filing of the notice of redemption are distinct acts. As against the person from

whom redemption is made, no notice is necessary. The notice is only operative and necessary as against other redemptioners, and their right to redeem *can be barred only by filing the notice of redemption* as required by the statute. The failure to file the notice of redemption does not render the redemption itself irregular or illegal. *It merely leaves the rights of other redemptioners unaffected.* It does not extend the limitations of sixty days, because that period begins only when the notice is filed." Spackman v. Gross, 25 S. D. 244, 126 N. W. 389. This rule is subject, of course, to the further condition that, as the first redemption, although irregular, was made within the year, the period of redemption could only be extended sixty days from the end of the year, and the plaintiff would be required to redeem within that period or not at all.

We can, indeed, see no foundation for the contention that whether the notice is filed or not, the redemption of a subsequent lien holder must be made within the year from the original foreclosure. The statute expressly provides that "if the property is so redeemed by a redemptioner another redemptioner may, *even after the expiration of one year from the day of sale,* redeem from such last redemptioner; provided, the redemption is made within sixty days after such last redemption." [Comp. Laws 1913, § 7755.] We have before us merely a redemptioner who is allowed by the grace of the statute to redeem. He is given a brief statute of limitations as against still other redemptioners, and such persons are given a still further period in which to redeem, and this, not for the benefit of the redemptioners merely, but of the original debtor, and in furtherance of the theory that the real estate shall be looked upon as a trust fund for the payment of the mortgagor's debts. Nor is there any merit in the contention that the plaintiff is estopped from redeeming because, prior to the subsequent redemption by the defendant, he may have said that he had no intention of redeeming. Even if he made such a statement, the original mortgagor and debtor should not be deprived in equity of his accruing advantage from having the notice filed and subsequent lien holders given the power and the opportunity to resort to and extend the uses of the mortgaged property, and to thus relieve him of his personal indebtedness and liability. So, too, the defendant in this case is not in any way prejudiced in so far as his claim or security is concerned,

but merely, if at all, in his rights as a speculator, and in such a court of equity is but little concerned. If he receives the amount of his claim with statutory 12 per cent interest, it is all that he can reasonably demand. He is a redemptioner, and not a purchaser, and he is not supposed to be a speculator. Styles v. Dickey, 22 N. D. 515, 134 N. W. 702. It is also to be noticed that no objection was made by the defendant, Nelson, to the redemption by the plaintiff, Fox, on the ground that it was too late, but merely on the ground that Fox refused to pay the amount of the alleged lien of the Advance Thresher Company mortgage. In his answer in the case before us the defendant states that all he wants is the money due him, and this statement is confirmed by counsel in his brief. "Further answering the complaint," the answer says, "defendant states that he has no objection to the plaintiff redeeming, and that he is perfectly willing that he do so, provided that he shall pay to the defendant all sums due to him by the said Mattern, and necessary to make such redemption."

We, too, are well satisfied that whether the Thresher Company mortgage had been paid or not (and from our perusal of the evidence we think it was), it was not incumbent upon the plaintiff to pay the same at the time of his attempted redemption. At that time, and as far as we know up to the present time, no duplicate notice of redemption was or has been filed by the defendant, Nelson. Section 7142, Rev. Codes 1905, being § 7756, Compiled Laws of 1913, provides that "written notice of redemption must be given to the sheriff and a duplicate filed with the register of deeds of the county, and if any taxes or assessments are paid by the redemptioner or if he has or acquires any lien other than that upon which the redemption is made, notice thereof must in like manner be given to the sheriff and filed with the register of deeds; *and if such notice is not filed, the property may be redeemed without paying such tax, assessment or lien.*" It will be noticed that in the latter part of the section we have just quoted there is an express provision that where no such notice is filed the payment of no other than the original debt sought to be redeemed from is necessary. It is also to be noticed that the provision relating to notice of the acquirement of subsequent liens is separate and distinct from the notice of redemption which must be filed in order to effect a regular statutory redemption. We may also add that after a careful examination of the

record we come to the conclusion that the Advance Thresher Company mortgage was in fact paid. The witness Mattern, the original mortgagor, testified positively to this fact, and the defendant, Nelson, though in the position of one who is seeking to assert a lien, singularly fails in disproving the fact. Though a business man, maintaining a machinery business and a retail store, he is unable to produce any records or books except the notes on which he claims to have indorsed all of the payments, but admits himself of having failed to indorse at least one payment. He admits that the original mortgagor, Mattern, knew of the facts and of the payments, and that at any rate, if he, Mattern, had kept any books, they would have been conclusive of the question. He admits that collections were made, not only by himself, but by the agents of the threshing machine company. He admits that numerous threshing machine accounts against farmers were turned over to him for collection. Receipts for payments to nearly half of the amount of the mortgage were produced over what he claims were paid thereon. Added to all this is the fact that he failed to file a duplicate notice of the redemption with the register of deeds of the subsequent lien which he claims to have purchased, and which he now claims not to have been fully paid.

The judgment of the District Court is reversed, and the cause is remanded with directions to enter judgment allowing the plaintiff to redeem said premises within sixty days from the filing of the remittitur in the District Court, upon the paying to the clerk of the District Court for the defendant the sum of $2,300, less taxable costs herein on trial and on appeal, which amount was tendered to the defendant by the said plaintiff on the 10th day of December, 1912, and the judgment and decree herein will further satisfy and cancel of record the mortgage and notes of the said Mattern to the said Advance Thresher Company.

CHRISTIANSON, J. (dissenting). I cannot agree to the conclusion reached by my associates in this case. In my opinion the majority opinion does violence to well-settled legal principles, utterly ignores prior decisions of this court, which have become rules of property in this state, and places a misconstruction upon the governing statutes so radical in character as to amount to a judicial amendment. The de-

cision, also, while apparently based on equitable considerations, is not only legally unsound, but manifestly unjust and inequitable to the defendant in this case.

This action was tried to the court without a jury. The defendant prevailed in the court below, and plaintiff appeals. The case comes here for trial *de novo*. This fact should be kept carefully in mind. Plaintiff has asked this court to retry this case, and it is self-evident that, in order to recover, he must plead and prove such facts as will warrant a judgment in his favor; and that if the evidence in the record fails to establish such facts, that then he cannot recover. The material facts are not in dispute. On November 8, 1906, Edward W. Mattern and his wife gave a mortgage on the land involved herein, to one E. A. Thayer, to secure the sum of $1,200. This mortgage was afterwards assigned to one Mary M. Brackett. This mortgage was foreclosed by advertisement, and on July 29, 1911, the premises covered thereby purchased by Mary M. Brackett at such foreclosure sale. The mortgage so foreclosed was the first lien on the premises. On January 10, 1908, Mr. Mattern and wife also gave a second mortgage to Simmons & Bodmer to secure the sum of $418, and on August 25, 1908, they gave a third mortgage to the Advance Thresher Company, to secure the sum of $1,926.34. The defendant, Nels Nelson, was a guarantor on the notes secured by the Advance Thresher Company's mortgage, and the testimony in the case is in conflict as to how much remains unpaid of this mortgage, *although the trial court made a finding that the mortgage was not paid.* The second mortgage to Simmons & Bodmer was afterwards assigned to the defendant, Nelson, and on June 10, 1912, he redeemed from the foreclosure under the first mortgage by serving notice of redemption and at the same time paying the amount of the foreclosure certificate with interest to the sheriff of Renville county, who thereupon issued a certificate of redemption to Nelson. A duplicate of the notice served on the sheriff, however, was not filed in the office of the register of deeds. No objection, however, was made to this irregularity by the sheriff or by Mary M. Brackett, but she accepted the money paid by the defendant, as redemptioner, and in every respect recognized the validity of the redemption, and this has never been questioned by anyone except the plaintiff in this action. On January 30, 1912, Mattern and his wife conveyed the

premises involved to the plaintiff, Fox, by a quitclaim deed in the usual and ordinary form for a purported consideration of $1, and other good and valuable consideration; and this deed was recorded in the office of the register of deeds of Renville county on February 20, 1912. The mortgage to the Advance Thresher Company was also assigned to Nelson prior to the time that the plaintiff, Fox, attempted to redeem, as hereinafter set forth. The plaintiff, Fox, and Mattern both testified that the quitclaim deed was not intended as an absolute conveyance, but was only intended as a mortgage for the purpose of securing certain indebtedness owing by Mattern to the Kenmare National Bank, aggregating in all $526.15. This indebtedness was afterwards, on May 8, 1912, renewed in the form of a note signed by Mattern and wife, payable to Fox. It is conceded, however, that no defeasance clause of any kind was contained in the deed, and no instrument of any kind, either executed or recorded, showing or tending to show that the quitclaim deed from Mattern and wife to Fox was intended only as a mortgage; and the trial court, among others, made the following finding in regard to the quitclaim deed: "That the said quitclaim deed, given by Edward W. Mattern and Edith F. Mattern to J. N. Fox, the plaintiff, on the 30th day of January, 1912, was recorded in the office of the register of deeds in and for Renville county, North Dakota, on the 20th day of February, 1912, in Book 3 of Deeds, at page 73; that no defeasance or other instrument in writing has ever been .recorded in the office of the said register of deeds, showing that the said quitclaim deed was intended as a mortgage, or showing that the said deed was not intended to be an absolute conveyance and transfer of said property; that the defendant relied implicitly upon the records, and reposed trust and confidence on the strength of said absolute deed, as well as statements made. to him by the plaintiff, that he was the owner of said property." This finding of the trial court is sustained by the undisputed evidence, as there is no testimony of any kind proving or tending to prove that the defendant, Nelson, had any knowledge or notice of any kind that the quitclaim deed from Mattern and wife to Fox was intended as a mortgage; while, on the contrary, there is positive testimony to the effect that Fox told Nelson that he was the owner of the land. There is no question but that Fox had actual knowledge of the foreclosure in question when he received the

quitclaim deed, and that negotiations in regard to an adjustment of the claims of the respective parties were had between the defendant, Nelson, and one Thronson, the cashier of the Kenmare National Bank, of which the plaintiff, Fox, is president, as well as between Fox and Nelson personally. On September 12, 1912, the defendant, Nelson, applied to the sheriff of Renville county for, and received, a sheriff's deed for the property. About that time the plaintiff, Fox, sought to make a redemption from Nelson. The record fails to show positively the date on which redemption was attempted, although it is alleged in the complaint that such redemption was attempted to be made on September 10, 1912, and this is probably the correct date. Fox at that time tendered Nelson the sum of $2,300, the same being the amount then computed to be due upon the foreclosure certificate and the second mortgage to Simmons & Bodmer, assigned to and held by the defendant, Nelson. Nelson refused to accept the tender, but had repeatedly prior thereto offered to release or assign all his claims in the property, and was willing to do so even after the period of redemption had expired, provided that Fox in addition would pay the amount Nelson claimed to be due on the mortgage of the Advance Thresher Company, amounting to about $1,100, which Fox refused to do. Thereafter, on September 14, 1912, Fox filed a duplicate of this notice of redemption with the register of deeds of Renville county. This action was commenced September 12, 1912. So far as the record shows no proceedings, except those above recited, were taken by Fox before this action was commenced. There is no allegation in the complaint, and no proof that notice was served on the sheriff of Renville county, or that any money was paid or tendered to the sheriff; nor is it contended that the tender made to Nelson was kept good by a deposit as provided by law.

The only references in the complaint to the redemption attempted to be made by the plaintiff in this case are the following clauses, viz.: . . . "That the said plaintiff has tendered in gold coin of the United States the sum necessary to make such redemption to the said defendant, Nels Nelson, but he refuses to accept the same," and "that the plaintiff has served upon said defendant a notice of his intention to redeem, and filed a copy of such notice with the register of deeds of Renville county, North Dakota."

Some mention is made in the majority opinion of the alleged fact

that Nelson based his refusal to accept the money only upon the insufficiency of the amount tendered to make redemption. The only testimony in the record as to what was said and done at the time plaintiff attempted to redeem and the money was tendered to Nelson is as follows:

The plaintiff, Fox, testified.

Q. At the time that you tried to make such redemption did you tender to the defendant, Nelson, the sum stated in plaintiff's Exhibit 3?

A. Yes.

Q. Did he refuse to accept the same?

A. Yes, sir.

And the defendant, Nelson, testified as follows:

Fox, Cole, and Thronson came over to my place of business in Kenmare and said they were going to redeem that farm. At that time they tendered me about $2,300 for the purpose of redeeming.

Q. What did you say to him?

A. I said I would not accept it unless they paid up my Advance mortgage, too.

Q. They would not pay that?

A. They refused to do that.

Among the defenses set forth in the answer are: (1) That plaintiff did not redeem from defendant within sixty days after the date of the redemption made by the defendant; (2) that on or about June 12, 1912, and at various times thereafter, plaintiff stated to defendant that he (the plaintiff) was the owner of the land, and always led defendant to believe that the deed held by the plaintiff was an absolute conveyance, and that plaintiff represented to the defendant that he was the owner of the land; that defendant relied on these statements, and for that reason made no redemption under the mortgage assigned to him by the Advance Thresher Company.

The majority opinion rests almost wholly upon the decision of the supreme court of South Dakota in the case of Spackman v. Gross, 25 S. D. 244, 126 N. W. 389. The laws of South Dakota relative to

redemptions, construed in the case of Spackman v. Gross, are identical with the laws which existed in North Dakota prior to 1897. The principal changes in the redemption laws of this state were made by the legislature in 1897, and were doubtless caused by the decision of this court in the case of State ex rel. Brooks Bros. v. O'Connor, 6 N. D. 285, 69 N. W. 692, decided November 24, 1896, wherein it was held that a redemptioner was in all instances required to redeem within sixty days after the last preceding redemption, although a year had not then expired from the day of sale, or he would lose his right to redeem. At the session of the legislature immediately following the promulgation of the decision in State ex rel. Brooks Bros. v. O'Connor, the laws of this state relative to redemptions were materially changed. Section 5542 of the Revised Codes, in force at the time of the decision in the case of State ex rel. Brooks Bros. v. O'Connor, is as follows: "If property is so redeemed by a redemptioner, another redemptioner may within sixty days after the last redemption again redeem it from the last redemptioner on paying the sum paid on such last redemption with like interest thereon in addition as provided by the preceding section and the amount of any assessment or taxes which the last redemptioner may have paid thereon after the redemption by him with like interest on such amount and, in addition, the amount of any liens held by said last redemptioner prior to his own with interest; but the judgment on which the property was sold need not be so paid as a lien. The property may be again, and as often as a redemptioner is so disposed, redeemed from any previous redemptioner within sixty days after the last redemption on paying the sum paid on the last previous redemption with interest at the same rate as provided for the first redemption in § 5541 in addition and the amount of any assessment or taxes which the last previous redemptioner paid after the redemption by him with like interest thereon and the amount of any liens, other than the judgment under which the property was sold, held by the last redemptioner previous to his own, with interest." This section as amended by the legislature in 1897 reads as follows: "If the property is so redeemed by a redemptioner, another redemptioner may, *even after the expiration of one year from the day of sale, redeem from such last redemptioner; provided, the redemption is made within sixty days after such last redemption. This sixty-day limita-*

*tion does not apply to any redemption made within one year after the sale by whomsoever or from whomsoever such redemption is made; but all persons entitled to redeem shall in all cases have the entire period of one year from the day of sale in which to redeem.* A redemptioner in redeeming from another redemptioner must pay the sum paid on such last redemption with like interest thereon in addition as provided by the preceding section and the amount of any assessment or taxes which the last redemptioner may have paid thereon after the redemption by him, with like interest on such amount and, in addition, the amount of any liens held by said last redemptioner prior to his own with interest; but the judgment on which the property was sold need not be so paid as a lien. The property may be again, and as often as a redemptioner is so disposed, redeemed from any previous redemptioner within sixty days after the last redemption on paying the sum paid on the last previous redemption with interest at the same rate as provided for the first redemption in § 7754 in addition and the amount of any assessment or taxes which the last previous redemptioner paid after the redemption by him with like interest thereon and the amount of any liens, other than the judgment under which the property was sold, held by the last redemptioner previous to his own, with interest." Section 7755, Comp. Laws, 1913. Section 5543 of the 1895 Rev. Codes reads as follows: "Written notice of redemption must be given to the sheriff and a duplicate filed with the register of deeds of the county, and if any taxes or assessments are paid by the redemptioner or if he has or acquires any lien other than that upon which the redemption was made, notice thereof must in like manner be given to the sheriff and filed with the register of deeds; *and if such notice is not filed, the property may be redeemed without paying such tax, assessment or lien.*" This section has not been amended, and is § 7756 of the Comp. Laws of 1913. Section 5544 of the 1895 Rev. Codes reads as follows: "If no redemption is made within one year after the sale, the purchaser or his assignee is entitled to a conveyance; or if so redeemed, whenever sixty days have elapsed and no other redemption has been made *and notice thereof given* and the time for redemption has expired, the last redemptioner, or his assignee, is entitled to a sheriff's deed; but in all cases the judgment debtor shall have the entire period of one year from the date of the sale to redeem

the property." But this section was amended by the legislature in 1897 to read as follows: "If the property is not redeemed according to law, the purchaser or his assignee or the redemptioner, as the case may be, is entitled to a sheriff's deed of the property and it shall be the duty of the sheriff to execute and deliver such deed immediately after the time for redemption has in each case expired." [Comp. Laws 1913, § 7757.] Section 5545 of the Rev. Codes of 1895 reads as follows: "If the debtor redeems, he must make the same payments as are required to effect a redemption by a redemptioner. If the debtor redeems, the effect of the sale is terminated and he is restored to his estate. Upon a redemption by the debtor the person to whom the payment is made must execute and deliver to him a certificate of redemption acknowledged or proved before an officer authorized to take acknowledgments of conveyances of real property. Such certificate must be filed and recorded in the office of the register of deeds of the county in which the property is situated, and the register of deeds must note the record thereof in the margin of the record of the certificate of sale." This section was amended by the legislature in 1897 to read as follows: *"In no case shall the debtor be required to pay more to effect a redemption than the purchase price with 12 per cent interest from the   .   .   . date of payment, notwithstanding the fact that he seeks to redeem from a redemptioner.* If the debtor redeems, the effect of the sale is terminated and he is restored to his state. Upon a redemption by the debtor the person to whom the payment is made must execute and deliver to him a certificate of redemption acknowledged or proved before an officer authorized to take acknowledgments of conveyances of real property. Such certificate must be filed and recorded in the office of the register of deeds of the county in which the property is situated, and the register of deeds must note the record thereof in the margin of the record of the certificate of sale. *In case the debtor redeems from a redemptioner who has to effect his redemption paid liens on the property, other than for taxes or assessments, the redemptioner shall be subrogated to all the rights of the former holders of such liens, and the filing of written notice of such redemptions as required by § 7756 shall constitute notice of the rights of such redemptioner in and to all the liens so held by him as equitable assignee as fully as if formal written assignments thereof had been recorded. All the statutes relat-*

*ing to redemptions from execution sales shall govern sales on mortgage foreclosure and these provisions shall apply to all sales hereafter made."* Section 7758, Comp. Laws 1913.

Section 5541 of the Rev. Codes of 1895 is the same as § 7754 of the Comp. Laws of 1913, and § 5854 of the Rev. Codes of 1895 is the same as § 8085 of the Comp. Laws of 1913. It will be observed that both of these sections expressly limit the time within which redemption may be made to one year, but these sections, of course, must be construed in connection with the amendatory acts of the legislature.

The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the legislature, and every statute must be construed with reference to the object intended to be accomplished by it. And in order to ascertain this object it is proper to consider the occasion and necessity of its enactment, the defects or evils in the former law, and the remedy provided by the new one. The act of the legislature of this state in 1897, as already stated, followed the decision of this court in State ex rel. Brooks Bros. v. O'Connor, and the obvious purpose of the legislative enactment, as appears from the language thereof, was to change the law of this state as interpreted by that decision, and in every instance give a whole year to the debtor and every redemptioner in which to make a redemption, and to eliminate the provision existing in the former law, limiting the time in which a redemptioner might redeem from a prior redemptioner to sixty days. And in order to prevent any redemptioner from being taken by surprise, it was further provided that in every instance the redemptioner should have at least sixty days in which to redeem from a prior redemptioner. The purpose of this amendment is apparent; (1) to give every person entitled to redeem a full year in which to do so, and (2) in the event a redemptioner came in on the last day or within the last few days prior to the expiration of the year prepared to make his redemption, and found that some other redemptioner had redeemed shortly before, the additional sixty days would give the person so seeking to redeem ample time in which to prepare new papers and in general do everything that would be necessary to effect his redemption. It will be observed that under the provisions of § 5544 of the 1895 Rev. Codes, it was made a condition precedent to the issuance of a deed not only that redemption be made, and that the sixty-days limi-

tation thereafter expired, but that *notice thereof be given.* This was expressly eliminated by the legislature in its amendment to this section in 1897. Hence, it is apparent that the legislature deemed this provision unnecessary or inapplicable under the law as amended. And while no change was made in § 5543, Rev. Codes 1895, still the language contained in the amendment of § 5545 of the 1895 Rev. Codes clearly shows that the legislature by its reference to § 5543 intended that the filing of notices therein required shall be for the benefit of the redemptioner rather than any other person. The supreme court of this state, in 1901, had an opportunity to construe the present laws of this state relative to redemption in the case of McDonald v. Beatty, 10 N. D. 511, 88 N. W. 281, and therein it was squarely held that under the laws of this state the question of whether or not a redemption was regularly or irregularly made could only be raised by the holder of the certificate of foreclosure sale. In that case the court says: "Concededly, the plaintiff paid to the holder and owner of the sheriff's certificates the amount required to make redemption, and such payments were made for that purpose. *It might be conceded that the owners of the sheriff's certificates could have successfully challenged plaintiff's right to redeem on the ground now urged, but they did not see fit to do so. On the contrary, they accepted and retained the redemption money, and by so doing waived any question as to his right to redeem which may have existed, and thereby validated the redemption, and clothed plaintiff with their statutory right under the sheriff's certificate.* That such effect follows the retention of redemption money is well settled, and in cases where the persons redeeming did not possess the strict statutory right of redemption. See Carver v. Howard, 92 Ind. 173; Hare v. Hall, 41 Ark. 372; Re 11th Ave. 81 N. Y. 436. In 3 Freeman on Executions, 3d ed. § 317, that author states that, 'if a redemption made by a disqualified person is acquiesced in by the purchaser or other person from whom redemption is made, it will estop such person, after he has received such redemption money, from denying the validity of the redemption.' *It is also well settled that the holder of the sheriff's certificate and the person redeeming are the only persons concerned in the regularity of the redemption. The owner of the certificate may deal with it as he sees fit. He may sell and assign it, or he may retain it and insist that anyone who wishes to*

*secure his right thereunder by redemption shall do so only by strictly complying with the statute, or 'he may waive his right to require exact and formal observance of the statutory mode, and his acceptance of the redemption money will be such* a waiver.' Carver v. Howard, supra. In this case it makes no difference to the defendant whether the rights evidenced by the sheriff's certificates were owned by the original purchasers or by the plaintiff, McDonald. He could redeem from the plaintiff as well as from the original purchasers, and it did not add anything to the amount required to free his premises from the lien; and by failing to redeem his rights in the real estate were lost. Blair v. Chamblin, 39 Ill. 521, 89 Am. Dec. 322; Hervey v. Krost, 116 Ind. 268, 19 N. E. 125; Massey v. Westcott, 40 Ill. 160; McClure v. Engelhardt, 17 Ill. 47. The most valuable right secured by the statute to a purchaser at a real estate mortgage foreclosure sale is, the right to demand and receive a sheriff's deed to the premises purchased in case there is no redemption. This right, as we have seen, passed from the purchasers at the foreclosure sale to this plaintiff by his redemption, and when he received the sheriff's deeds upon which he now relies he acquired just what the sheriff's certificates authorized the original purchasers to obtain." McDonald v. Beatty, 10 N. D. 517, 518, 88 N. W. 281. In the case at bar it is conceded that the plaintiff, Fox, made no attempt to redeem within the year of redemption, and it is likewise conceded that he made no attempt to redeem within sixty days after the date of the redemption by the defendant, Nelson. It is obvious that the plaintiff is placed in no worse position by the fact that Nelson redeemed. If Nelson had not redeemed, Mary M. Brackett, the owner of the sheriff's certificate of purchase, would have been entitled to a deed on and after July 30, 1912. It is conceded that if Nelson had taken an assignment of the certificate from Mary M. Brackett, plaintiff would not be entitled to redeem. The redemption by Nelson operated as an assignment of the certificate of foreclosure sale to him. Whether or not Nelson was entitled to such assignment, or to make such redemption, was purely a matter between him and Mary M. Brackett, the holder of the certificate. I believe that the rule laid down in the case of McDonald v. Beatty is entirely sound, and should be adhered to. The correctness of that rule has never been questioned, and although the legislature of this state has held six

sessions since that decision was made, no legislation has been enacted to limit or qualify the laws then in force, as construed by this court in that decision. This, of itself, is persuasive evidence that the construction placed thereon was in accordance with the legislative intent. The principle therein laid down has also become a rule of property in this state.

The legislature of this state has by law given every person a whole year in which to exercise the right of redemption, and under certain conditions an additional sixty-day period is provided. And in order to provide that all persons should have not only constructive but actual notice of foreclosures, the legislature in 1909 enacted a law (§ 8095, Comp. Laws) making it the duty of the register of deeds to notify the record owner and all subsequent mortgagees within ten days after the filing of the sheriff's certificate and notice of publication in the register of deeds' office. It would therefore seem that the present laws are adequate to protect the interests of all parties. If, however, they are not, the remedy is with the legislature, and not with the court, and in no event does it justify or warrant this court in performing the functions of the legislature, and by judicial fiat amend the statutes of this state, as the majority do in this case.

As already stated, the majority opinion rests upon the decision of the supreme court of South Dakota in the case of Spackman v. Gross, 25 S. D. 244, 126 N. W. 389. The laws of South Dakota relative to redemptions, and construed in that opinion, are identical in every respect with the redemption laws of this state as they existed prior to their amendment by the legislature in 1897. In the case of Spackman v. Gross, the mortgage was foreclosed on December 29, 1906, and on January 29, 1907, about a month after the foreclosure, Spackman redeemed under a subsequent mortgage. The duplicate of the notice of redemption was not filed in the office of the register of deeds, but recorded at length. On December 28, 1907, one year, less one day, from the date of the foreclosure sale, another mortgagee, named Johnson, holding a mortgage subsequent to Spackman, sought to make redemption, and the supreme court of South Dakota held that the recording of the notice of redemption did not constitute a compliance with the statute, and that for that reason the sixty-day limitation did not apply, and says: "Johnson had the right to redeem *at any time within the*

*year of redemption,* unless such right became barred by the filing of the notice of redemption and the expiration of the sixty-day limitation." As already stated, the laws construed by the South Dakota court were identical with the laws of this state as construed in the case of State ex rel. Brooks Bros. v. O'Connor, 6 N. D. 285, 69 N. W. 692. Under the decision of the South Dakota court in Spackman v. Gross, it is merely held that, in the absence of the filing of the notice of redemption, the subsequent mortgagee *might redeem at any time within the year.* It is not contended in that decision that the failure to file such notice would give more than one year in which to make such redemption. Nor is it contended that the plaintiff in this case would be entitled to redeem under the laws as they existed in this state prior to the amendments adopted by the legislature in 1897. Therefore, if the plaintiff is entitled to redeem at all, it must be by reason of the amendments so adopted, above set forth. It is unquestioned that the amendments of the legislature were adopted as a direct result of the decision of this court in construing the then existing laws in the case of State ex rel. Brooks Bros. v. O'Connor. They were enacted to obviate the condition then existing. The obvious intent was to eliminate the sixty-day limitation during the year of redemption, and to provide every person entitled to redeem a full year in which to do so. And in order that no interest might be jeopardized by unexpected redemptions immediately prior to the expiration of the year of redemption, the legislature further provided that a redemptioner should in all instances be allowed sixty days in which to redeem from a prior redemptioner. It is also clear that on principle the case of Spackman v. Gross is not authority in support of appellant's contentions in this matter. In that case, under the law, Johnson had a whole year in which to redeem, unless this period was cut off by the redemption of Spackman. In the case at bar it is conceded that Fox has no standing as a redemptioner, unless his time in which to redeem was extended by the redemption made by the defendant, Nelson. Fox says in one breath, "You redeemed and thereby extended the time in which I might redeem," and says in the next breath, "But your redemption was irregular,—you failed to file a duplicate of your notice of redemption; therefore the statute limiting the time in which I must redeem from you does not apply to me. I will accept the benefit of your redemption,

30 N. D.—39.

but I will not accept its burdens." Fox predicates his own redemption on that of Nelson. It would seem obvious that he cannot assert this redemption to be good for one purpose, and bad for another.

Section 7756 of the Compiled Laws provides that "written notice of redemption must be given to the sheriff," and § 8086, Comp. Laws provides that "notice of redemption may be given to the officer or person making the sale." There is no allegation in the complaint, and absolutely no evidence that Fox paid or tendered any money to, or served any notice upon, the sheriff of Renville county, who was also the person making the sale, but the only thing which Fox did was to serve a notice upon the defendant, Nelson, and tender him certain moneys, and then, *two days after the commencement of this action,* file a duplicate of the notice so served with the register of deeds. Hence, it is apparent that plaintiff did not seek to avail himself of the method provided by statute, by making payment to the sheriff, but sought to extinguish the obligation by making payment to the then holder of the certificate of purchase. While the law permits payment to be made either to the sheriff or to the holder of the certificate, still payment to one of these parties is an absolute essential prerequisite to a redemption. And under our laws a method is provided for the payment of an obligation, even though the person authorized to receive payment refuses to accept,—namely, by tender and deposit in the manner provided by law. So the plaintiff could, if he desired, pay the moneys required to make redemption to the defendant, Nelson, and such payment would extinguish defendant's claim (conceding that Fox was entitled to redeem). Fox, however, did not pay, but merely tendered payment. In this case it is not contended by plaintiff, either in the pleadings or in the proof, that the tender was kept good; in fact this is negatived by the very allegations in the complaint. The tender did not pay the debt. Neither did it devest the title of the defendant, Nelson, as the owner and holder, by operation of law, of the certificate of purchase.

This question was squarely passed on by the supreme court of Minnesota in the case of Dunn v. Hunt, 63 Minn. 484, 65 N. W. 948, wherein that court said: "We apprehend that no case can be found where a tender was essential to or the foundation of an action, and where it was held that the tender was effectual unless kept good. *Equity is no less strict than the law in this respect.* In this case, plain-

tiff's right to redeem is predicated wholly on the tender; for, confessedly, but for that his right to redeem has expired, after foreclosure of the mortgage, whereby plaintiff's interest in the property had become merely a right of redemption, the refusal of the tender did not *per se* devest the defendant of his interest, or revest a clear title in the plaintiff. Care must be taken to distinguish the case from those where the rights of the plaintiff were not dependent upon a tender, the tender being only important as bearing on the question of interest and costs. Here the tender was the very foundation upon which plaintiff's right of action depended. Hence, not having been kept good, it is ineffectual for any purpose, and plaintiff stands to-day precisely as if no tender had ever been made." The same proposition was also considered by this court in the case of Brown v. Smith, 13 N. D. 580, 586, 102 N. W. 171, and in considering the same the court said: "There is no proof in the record that the plaintiff deposited the money tendered for redemption in a bank of good repute, payable to defendants. The appellant assigns this defect of proof as a ground for reversal, and we think the point is well taken. *The statute imposes on the redemptioner the obligation to pay the amount required to redeem as a condition precedent to the acquirement of any right to the property sold. It was incumbent on the plaintiff, therefore, to show that the obligation which the statute imposed on him had been extinguished.* Section 3814, Rev. Codes 1899, provides: 'An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor with some bank of deposit within this state of good repute, and notice thereof is given to the creditor.' Section 3818 provides: 'An obligation for the delivery of money . . . is not discharged by an offer of performance, nor any of its incidents affected, unless the thing offered, if money, is deposited as provided in § 3814. . . .' The respondent argues that, inasmuch as the stipulated facts show that a tender was made, it must be presumed that the offer of the money was followed by a proper deposit, in the absence of a denial of such deposit by the defendant. That argument is based on the erroneous assumption that the act of tender, under our statutes, includes the deposit of the money. The Civil Code has not changed the definition of the term 'tender.' The term still means what it always meant,—an offer of performance. *The Code*

*has substituted the requirement of deposit of the thing tendered, at the risk of the creditor, in place of the common-law requirement that a tender must be kept good by a readiness to pay and payment into court.* The Code has also made this further innovation on the common law with respect to the effect of a tender,—that a *mere tender of the debt is no longer sufficient, as at common law, to extinguish a mortgage or pledge of property, but, to have that effect, the tender must be kept good by a deposit of the thing tendered, subject to the order of the creditor.* Section 3814, quoted above, provides that, in the absence of a deposit, an obligation is not discharged, 'nor any of its incidents affected,' by a mere offer of performance. In harmony with this rule, we find that § 4693, relating to the redemption of liens, provides that, if the amount secured requires the delivery of money, an offer to pay must be followed by a deposit of the money, as prescribed in § 3814."

It is conceded that Mattern could not redeem unless he did so within one year after the date of the sale. And it must likewise be conceded that if the plaintiff, Fox, is merely the purchaser of the equity of redemption, that then he can have no greater right to redeem than did Mattern. The plaintiff, however, claimed that, as a matter of fact, his deed was only a mortgage; but the trial court found that the plaintiff had represented to the defendant that he was the owner of the property, and this fact is undisputed under the evidence in this case.

The defendant, Nelson, testified with reference thereto as follows:

Q. And, Mr. Nelson, did you during all this time, both before you made your redemption and afterwards, rely fully upon that statement both of Mr. Fox and Mr. Thronson, that Mr. Fox was the owner of that land?

A. I did.

Q. And it was on the full reliance on that that you went ahead and made your redemption?

A. Yes.

Q. And tried to make settlement with Mr. Fox?

A. Yes, sir.

Q. When did you first learn that Mr. Fox claimed to hold this deed as a mortgage?

A. Sometime in September.

Q. That same year?

A. 1912, yes.

Q. That was after the expiration of the year?

A. Yes, sir.

And his testimony is not denied either by Fox or any other witness for the plaintiff. It is therefore clearly established in this case that Fox held himself out to be the owner not only on the records, but by actual statements to Nelson induced him to believe that Fox claimed as owner, and not as mortgagee. Nelson acted in absolute reliance upon the fact that Fox claimed as owner; and it is undisputed that the first time that Fox indicated to Nelson that he claimed as mortgagee was on September 10, 1912, when he attempted to redeem. Nelson was therefore misled by these statements, and Fox should not at this time be permitted to assume a contrary position. It is axiomatic that "one must not change his purpose to the injury of another." When Nelson redeemed, he believed Fox to be the owner. Under all rules of equity, Fox should be compelled to adhere to the position which he had assumed, *viz.,* that of the owner of the premises. 16 Cyc. 722; 27 Cyc. 1033, note 83; see also McVay v. Tousley, 20 S. D. 258, 129 Am. St. Rep. 927, 105 N. W. 932; McVay v. Bridgman, 21 S. D. 374, 112 N. W. 1138; Bigelow, Estoppel, p. 732.

The majority opinion, after quoting with approval certain language used by the South Dakota court in Spackman v. Gross, proceeds to qualify and limit the application thereof. In fact the very limitation sought to be placed thereon is in direct conflict with reasoning advanced by the South Dakota court in the language quoted. The South Dakota court was at least consistent in its language and logic, and contented itself with an interpretation of the statutes under consideration. The majority of this court is neither consistent nor logical, but bases its conclusions upon certain language used by that court, the very essence of which it repudiates; and, then, to obviate to some extent the chaos which is likely to result and the uncertainty created in all land titles in this state based on irregular redemptions, proceeds to legislate in the most flagrant manner possible. The very limitation added is, of course, *dicta,* as it is not necessary to a determination of the issues involved herein. And it is rather strange for a court which substitutes

its judgment for that of the legislature, and disregards, and, in effect overrules, two prior decisions of this court, to seek to limit, by *dicta,* the natural and necessary consequences of the doctrine promulgated by its opinion. Do the majority members believe that their *dicta* has greater force, and in the future will be deemed more binding upon the courts of this state, than the unanimous decisions of this court in McDonald v. Beatty and Brown v. Smith, which they refuse to follow? The *dicta* seeking to limit the effect of the decision is an absurdity in itself, and a repudiation of the very authority on which the majority opinion is based. The South Dakota court said: "The notice is only operative and necessary as against other redemptioners, and their right to redeem *can be barred only by filing the notice of the redemption* as required by the statute. The failure to file the notice of redemption does not render the redemption itself irregular or illegal. *It merely leaves the rights of other redemptioners unaffected.* It does not extend the limitations of sixty days, because *that period begins only when the notice is filed."* If the majority opinion is correct, it must be for the reasons advanced by the South Dakota court,—it has nothing else on which to stand.

The South Dakota court was consistent both in its language and reasoning,—it did not resort to judicial legislation,—and the result reached by that court was logical. That court said: The statute provides that the notice of redemption must be filed in the register of deeds' office. The first redemptioner failed to do this; therefore the rights of other redemptioners are *unaffected,* and they stand in the same position as though the first redemption had never been made. If this reasoning is applied to the case at bar, it will lead, not to the conclusion reached by the majority in this case, but to one entirely different. If Fox's rights were *unaffected,* they necessarily remained the same as though Nelson had never redeemed; and if so Fox had a year in which to redeem,—no more and no less. The majority members of this court say in one sentence that unless the notice of redemption is filed, that the rights of subsequent redemptioners are unaffected; and in the next sentence deny the first proposition, and say that the rights of subsequent redemptions are (favorably) affected, as the time in which subsequent redemptioners are required to redeem *does not commence to run until the notice is filed, i. e.,* that a subsequent redemptioner has a period of

sixty days *after the notice is filed* in which to redeem; and then, in order to provide a fitting conclusion to their logical deduction, they go on to say that this right, which was *unaffected* by the first redemption, and this period, which has never commenced to run, will nevertheless expire at the end of one year and sixty days after the date of the sale.

The majority opinion cites North Dakota Horse & Cattle Co. v. Serumgard, 17 N. D. 466, 29 L.R.A.(N.S.) 508, 138 Am. St. Rep. 717, 117 N. W. 453; Colonial & U. S. Mortg. Co. v. Flemington, 14 N. D. 181, 116 Am. St. Rep. 670, 103 N. W. 929, and Paine v. Dodds, 14 N. D. 189, 116 Am. St. Rep. 674, 103 N. W. 931, and intimates that some rule of property has been established by these cases which is involved in the case at bar. An examination of these decisions will show that by no possible means of reasoning could any principle decided in those cases, or any rule of property established thereby, be involved or determined in this case. "A 'rule of property' is a 'settled legal principle governing the ownership and devolution of property.' This principle can be settled only by the supreme court of the state, and its utterances, in cases pending before it involving the title to property, construing statutes or constitutional provisions, have the effect of establishing a rule of property *to the extent only that the particular* statute or constitutional provision was in that case involved, or necessarily considered and determined by the court in the case then pending before it." Yazoo & M. Valley R. Co. v. Adams, 81 Miss. 90, 32 So. 937; see also Black's Law Dict. 34 Cyc. 1821; 24 Am. & Eng. Enc. Law, 1011. The propositions involved in the three cases cited are radically different from the one involved in this case. Neither the principles nor the particular statute involved in this case was in any manner considered, directly or indirectly, in the cases cited. And to say that this case is governed by any rule of property established by this court in those decisions is wholly untenable, and an entire misconception of what is meant by the term "a rule of property." An entirely different condition exists, however, with reference to the cases of McDonald v. Beatty, 10 N. D. 511, 88 N. W. 281, and Brown v. Smith, 13 N. D. 580, 102 N. W. 171. Those two cases passed upon and directly decided two of the very principles which are involved in this case, and, hence, those decisions are clearly rules of property which are entirely ignored by the decision of the majority in this case. And

while the questions presented and determined in North Dakota Horse & Cattle Co. v. Serumgard were entirely different from those presented in the instant case, still the principle announced by this court in McDonald v. Beatty was in no manner receded from; but on the contrary, in the latter case, we find the following language from McDonald v. Beatty, quoted with approval: *"It is also well settled that the holder of the sheriff's certificate and the person redeeming are the only persons concerned in the regularity of the redemption."* This principle is repudiated by the majority in this case.

This is not an action wherein the benefit of the redemption law is invoked by an owner to save his property; but where a man of affairs —the president of a bank—stands idly by, and when he finds that Nelson has failed to file an affidavit of the amount due on the Advance Thresher Company's mortgage, sees a good speculation in the deal, and so tries to come in and redeem. Under the decision of the majority, Nelson is penalized for relying on the statements made to him by Fox, and precluded from realizing anything on the amount still due on the Advance Thresher Company's mortgage. He is deprived of a valuable, vested property right, by one who has no standing either in a court of law or equity,—by a speculator who has failed to either allege or prove any facts entitling him to recover. The majority decision in my opinion is a most dangerous precedent. It in effect overrules two prior decisions of this court, which have become rules of property in this state; and upsets the settled law of this state upon a subject of vital importance. It will tend to make titles based on redemptions unsafe and undesirable, because there are doubtless many redemptions wherein similar irregularities have occurred, and expensive and vexatious litigation may follow. I respectfully decline to subscribe to the logic, legal principles or equitable doctrine adopted by the majority. In my opinion the decision is indefensible from every possible standpoint. I am authorized to say that Chief Justice Fisk fully concurs in my views.

Goss, J. (concurring). I fully concur in the main opinion. My purpose is to discuss the dissent. This case comes here for trial *de novo*. But the pleadings and contentions presented below and here must largely shape our retrial. Doubtless the dissenting members

could have tried the case more closely, and in proper season could have presented questions wholly unthought of, because foreign to the theory of the case until found in their dissent. This applies to much that has been given great importance by them. Appellant has assumed that on September 10th Fox redeemed regularly and in strict accord with the statute, provided (1) he was a redemptioner, (2) his redemption was in time, and (3) if he could redeem without payment to Nelson of the Thresher Company mortgage, which mortgage Fox refused to pay on the ground that it was fully paid. These are the questions presented by appellant's complaint and the briefs. It is then necessary to determine the status of Fox, whether he is a redemptioner, or but in the shoes of the original owner mortgagor; and if he is a redemptioner, whether his attempted redemption, which the parties have treated as otherwise sufficient, was in time. The rights of Fox, whether he be a mortgagor or redemptioner, attached during the running of the year of redemption on the foreclosure of the first mortgage, during which period he took his quitclaim deed, so that it ill becomes the dissent to question the application of North Dakota Horse & Cattle Co. v. Serumgard, 17 N. D. 466, 29 L.R.A.(N.S.) 508, 138 Am. St. Rep. 717, 117 N. W. 453, to this case, as not announcing a rule of property here controlling. Were it not for that decision, squarely holding that a mortgage given during the year of redemption places the mortgagee in the position of a redemptioner, instead of constituting him but an assignee of and on the footing of the mortgagor, the dissent would undoubtedly strenuously contend that Fox could not be a redemptioner. Thus, the holding in 17 N. D. 466, is but adopted and applied as establishing that Fox can be a redemptioner, if in legal contemplation he is to be regarded as the mortgagee of the owner, rather than the owner. By what course of reasoning the application of the Serumgard Case to this case could be avoided or denied, as not a rule of property directly applicable, is beyond my conception, when the rule of law it declares establishes the very status of Fox to be that of a redemptioner. Under this decision, coupled with that of Scheibel v. Anderson, 77 Minn. 54, 77 Am. St. Rep. 664, 79 N. W. 594, on all fours (this transfer being admittedly a security transaction only between the owner and Fox), the plaintiff is a redemptioner notwithstanding he is holder of the paper title. It is noticeable that the dissent cites no authority upon these propositions.

Judging from the industry, as well as the ingenuity, displayed in the dissent, it can be assumed there is none to be found to the contrary, and that the principles announced by Scheibel v. Anderson are settled law, as are those also declared in the Serumgard Case. There can seem to be no escape from the direct and necessary application of the principles and the reasoning of these cases. An estoppel is hinted at in the dissent. If Fox must be regarded as a mortgagee and redemptioner, this is indeed a novel proposition. Can a redemptioner be estopped from exercising his right of redemption, forsooth because, not a lawyer, he made a misstatement concerning the tenure of his holding, the legal effect of what in law constituted his mortgage? This is upon the assumption that "it is axiomatic that one must not change his purposes to the injury of another. When Nelson redeemed he believed Fox to be the owner," quoting from the dissent. This elemental basic principle of estoppel is unquestionably the law, but how can it apply in the absence of an injury to Nelson? Did not Fox tender him the full amount (aside from the thresher mortgage, claimed paid and referred to later) necessary to redeem? Appellant's brief and the dissent admits he did. Fox stands ready still to pay that statutory amount to effect a statutory redemption. He tenders the same amount for redemption that any mortgagee subsequent to Nelson would have paid. He tenders all the statute requires to be paid to effect a redemption. Manifestly, no injury could result to Nelson simply from any such statements. Descent of title to Fox for full statutory value paid, if the redemption is otherwise legal, can work no injury. This prevention of a forfeiture of title to Nelson is no legal injury. The dissent fallaciously assumes an injury upon which to ground an estoppel.

Was the attempted redemption otherwise sufficient in time, omitting from consideration the validity of the thresher mortgage? Half the dissent is devoted to a statement of the statutes. It is not the first labor that has brought forth a mouse as its progeny. And that as the basis for erroneous reasoning consists in an assumption, pure and simple, that in the 1897 amendment to § 5544, Rev. Codes 1895, the filing of written notice of redemption with the register of deeds was dispensed with because the identical provisions concerning notice were not carried forward into § 5544, as re-enacted by chap. 121, Sess. Laws of 1897. Section 5544 required notice of redemption by the words "and notice

thereof given," as set out in the dissent, but § 5543, Rev. Codes 1895, now § 7756, Comp. Laws 1913, specifying "the record of redemption," was left untouched by the 1897 amendment, wherein was amended §§ 5542–5545, but leaving the statute as to the required record of redemption as it then existed, and as it still exists. By § 5543, "written notice of redemption must be given to the sheriff and a duplicate filed with the register of deeds of the county, and if any taxes or assessments are paid by the redemptioner or if he has or acquires any lien other than that upon which the redemption was made, *notice thereof* must *in like manner* be given to the *sheriff* and filed with the register of deeds; and if such notice is not filed the property may be redeemed without paying such tax, assessment or lien." This statute contemplates the giving and the filing of two different kinds of notices *viz.,* the written notice of redemption, and a second and subsequent notice that the redemptioner has paid taxes or holds other liens. To whom are such notices intended to be given? The dissent would infer to parties antecedent in the chain of title, and not to subsequent lien holders, as was Fox. Such would be giving notice to persons not then interested in the property, parties already paid off. The only notice the statute can contemplate is notice to subsequent lienors to the redemptioner, *i. e.,* those who may by conforming to the law succeed to the interest and status of the present redemptioner. With this statute standing unaltered, requiring the redemptioner to file his written notice of redemption, the legislature, in the 1897 amendment, changed with reference thereto § 5544, Rev. Codes 1895, to read: "If the property is not redeemed *according to law* [meaning according to § 5543 and other statutes], the purchaser or his assignee *or the redemptioner,* as the case may be, is entitled to a sheriff's deed of the property, and it shall be the duty of the sheriff to execute and deliver such deed immediately after the time for redemption *has in each case expired."* [§ 7757, Comp. Laws 1913.] The amendment was made with reference to a law specifically requiring notice by filing, and the mere omission to again require it is because it was both unnecessary and was already required. So, if it be conceded that under the law before the 1897 amendment, the giving of notice was necessary by filing thereof, it certainly was equally necessary after such amendment, and is yet. And this the dissent admits by saying, "It will be observed that under the provisions

of § 5544, Rev. Codes 1895, it was made a condition precedent to the issuance of a deed, not only that redemption be made and that the sixty-days limitation thereafter expired, but that *notice thereof be given."* Concerning this notice requirement, the dissent also says: "This was expressly eliminated by the legislature in its amendment to this section in 1897. Hence, it is apparent that the legislature deemed this provision unnecessary or *inapplicable* under the law as amended." From what can it be said that it is inapplicable? This conclusion is on its face erroneous. The dissent must have appreciated this, and would avoid the results of application of the ordinary rules of statutory construction by a befogging discussion of § 5545, concerning rights of and applicable to, not *redemptioners from redemptioners,* but of a *debtor redeeming from a redemptioner.* Concerning this, our present § 7758, Comp. Laws 1913, the dissent avers that the same "clearly shows that the legislature, by its reference to § 5543, intended that the filing of notice therein required shall be for the benefit of the redemptioner rather than any other person." The reference in § 5545, Rev. Codes 1899, to § 5543, Rev. Codes 1899, to notice, is, "and the filing of written notices of such redemptions as required by § 5543 shall constitute notice of the rights of such redemptioner in and to all the liens so held by him as equitable assignee, as fully as if formal written assignments thereof had been recorded," is not to redemptions by one redemptioner from another redemptioner, and can be no aid to a construction of the statutes solely governing redemptioners, with which we are now concerned. The discussion of and copious extracts from McDonald v. Beatty, 10 N. D. 511, 88 N. W. 281, is wholly foreign to all issues in this case. With it we have no quarrel, unless we should hold that Fox is an owner claiming the right to redeem under § 7758, not a redemptioner. But the law as declared in the Serumgard Case fixes his status to be that of a redemptioner.

It is true that the purpose of the 1897 amendment was to obviate the effect of State ex rel. Brooks Bros. v. O'Connor, 6 N. D. 285, 69 N. W. 692, under which holding, where a redemptioner redeemed from the purchaser soon after the sale, for instance, within a month from the sale, a would-be subsequent redemptioner must redeem within sixty day from the first redemption made, even though it be nine months before the year from sale, or be shorn of his right to redeem at all. The

first purpose of the statute was to grant to lien holders and possible subsequent redemptioners, as well the right enjoyed by debtors, the right to redeem from such a redemption at any time within the year from sale. Section 7756, with the first proviso, is apparently confusing. It grants the right of the debtor to redeem at any time within one year, and under its terms where, as here, a redemptioner has redeemed within the year, but less than sixty days from the expiration of the year of redemption so-called, subsequent redemptioners may nevertheless redeem, even after the year from sale so long as they redeem within sixty days from the date when the redemptioner from whom they seek to redeem effected his redemption. Thus arises the question of how second or subsequent redemptioners, occupying the relation of Fox to Nelson, may know the date upon which their immediately prior redemptioner redeemed, or in other words the date at which commenced their sixty-day short period for redemption. Must Fox accept the mere word of Nelson as to when Nelson redeemed? Had Nelson the right to give his written notice of redemption to the sheriff, have his redemption money accepted (and thereby confirm his own redemption, though irregular under McDonald v. Beatty, 10 N. D. 511, 88 N. W. 281), but fail to file his *duplicate notice of redemption* with the register of deeds, and thus entirely suppress notice to Fox and all subsequent lien holders of the fact that he has redeemed at all? Or, again, may he thus suppress the notice *required* by the statute *to be of record,* and then, because Fox did not mistakenly tender or pay to the purchaser the amount necessary to redeem in ignorance of any redemption made, and this within the year, lose his right of redemption when, had Nelson but placed his certificate of record, as required by statute, all would have been plain, and constructive notice imputed, and Fox would have known that he had six weeks only beyond the year from the sale within which to redeem from Nelson. Not only the dissent, but the respondent, admits that, had Fox been some three days earlier with his tender, he would have been within the sixty-day period from the time of Nelson's redemption, and within his rights as to time, and could have compelled redemption so far as time limit is concerned, even though a month and a year after the sale. In other words, does the statute requiring a duplicate notice of redemption to be filed to fix time limitations as of the date of filing mean what it says, or instead can it be

disregarded and notice suppressed and the party suppressing it still be enabled to plead his own failure, however deliberate, to comply with law and defeat a redemption otherwise legal? Spackman v. Gross, 25 S. D. 244, 126 N. W. 389, announces the principle that the filing of the redemptioner's notice of redemption sets in motion a sixty-day period of limitation against subsequent redemptioners. True, when it was announced, the law stood as declared in State ex rel. Brooks Bros. v. O'Connor, and when subsequent redemptioners did not have the balance of the year from the sale or sixty days from redemption, within which to redeem from prior redemptioners; but that is wholly beside the case. The principle nevertheless applies; whether the sixty-day limitation started by the filing shall commence within the year or extend beyond the year has nothing to do with the principle *that only the filing of the notice starts the statutory sixty-day limitation period running*. What is said in the dissent to avoid the force of this principle seems but to emphasize its soundness, because of a manifest inability to avoid both its reason and applicability. Fox had a right to redeem within the year. The statute informed him that. If he or some lienor prior to him did not redeem at the expiration of one year, he would be shorn of all rights, and the property would be the certificate holder's, or some redemptioner who had redeemed more than sixty days prior to the expiration of one year from the sale. He also had the right to know what prior mortgagee had redeemed, and when and from whom he had redeemed. He had a right to rely on the mandate of the statute requiring such redemption, in order to be a redemption imputing notice thereof to him that the same should be filed with the register of deeds, that he might consult it. And until it was so filed it was not constructive notice to him. With actual notice we are not concerned under the proof. Fox had the right to consult the records and rely on them throughout the year of redemption. After the expiration of the year from sale he learns that a redemption has been made, with no notice thereof filed. He was not charged therefore with constructive notice of that redemption. Upon learning of the redemption made and after the expiration of the year, but within sixty days from the expiration of the year from sale, he learns of it. He was bound to know that no redemption within the year can extend the period beyond sixty days after the year. The law charges him with

that notice. Failure to file did not during the year and before the expiration of it set the sixty-day limitation statute in motion. He was granted the right through the failure to file to take the year. But the expiring of the year limit automatically imputed notice of whether or not a redemption had been made, and that, if one was effected, the limitation was in motion within which he must redeem, if at all. If he had the right to redeem at all upon discovery after expiration of one year from sale that a redemption had extended the time beyond the year, but that no sixty-day statute had been set in motion by filing of notice of redemption, he had the full sixty days after the year in which to redeem. No other limitation can apply. The two limitations —year and sixty days—must and do apply. He must be allowed to redeem within that sixty days. This is but giving force to statutory requirements in accordance with precedent and common sense. To do less would permit an unscrupulous redemptioner, desirous of sacrificing the property mortgaged by forfeiting the same to himself, to suppress the very notice that the statute requires to be filed, and put a premium upon his own lawlessness by awarding him the fruits of his violation of plain statute. And this too in a court of equity! And the dissent charges the majority with judicial legislation because equitable principles are thus administered in conservation of the fund, the mortgagor's property, and indirectly applied upon the mortgagor's debts, and in prevention of a forfeiture sought by one claiming his rights because of his own success in suppression of notice, coupled with his fraudulent act in demanding payment the second time of a $2,000 mortgage once paid. Title to this property was worth upwards of $5,-000. He would forfeit it to himself for $2,300, refusing that amount from Fox. This language is used advisedly. It appears, and that without challenge too, in the dissent, that Nelson has claimed as unpaid a mortgage aggregating over $2,000, which he knew was fully paid and should have been satisfied of record. He was the agent of the Advance Thresher Company with both actual and imputed knowledge of the facts of payment. He sets up this bogus paper claim, and says in effect, when the full amount of his debt with 12 per cent was tendered him, as well as pleads in his answer, "If you will pay me this further amount that is not owing me, you may redeem." The dissent would characterize Fox as a speculator with Nelson, "penalized

for relying on the statements made to him by Fox, and precluded from realizing anything on the amount still due on the Advance Thresher Company's mortgage;" and "deprived of a valuable vested property right by one who has no standing, either in a court of law or equity,— by a speculator who has failed either to allege or prove any facts entitling him to recover." A seeming exaggeration wholly beside the proof. His valuable right was a "right" to a "forfeiture," a sacrifice of someone's property on a pretense.

In the dissent is found another untenable doctrine, not advanced by respondent, but born in the ingenuity of the writer of the dissent. It would apply the law of tender governing law actions to equity suits, and disregard the doctrine of equitable tender. Offer in the pleadings to do equity entitles petitioner to relief, if otherwise equity should intervene. 16 Cyc. 141. Brown v. Smith, 13 N. D. 580, 102 N. W. 171, is cited in the dissent as applicable. That was an action to recover possession of personalty. It was tried and a verdict directed, and on appeal a new trial was ordered. A law appeal with a law judgment awarded. The case before us is not one of an attempted discharge of an obligation by payment, and the rules relative to tender thereunder cannot apply. It is a distinct branch of equitable jurisprudence. Pom. Eq. Jur. § 8. As stated in the dissent, "the tender did not *pay* the *debt.*" Equity will still pay Nelson his debt and grant Fox his right to redeem. The question is whether equity will allow subrogation after a statutory tender for redemption purposes has been made. Our redemption statutes do not require that a redemptioner shall lose his equitable rights unless he keeps good his tender by deposit, as on discharge of an obligation. The equitable right accrues immediately upon tender made, and may be enforced. Payment into court as a condition for granting of equitable relief may be compelled instead. In equity the money is deemed in court. The decree will care for that. In my opinion the dissent is in all things unsound.

CHRISTIANSON, J. (further dissenting). Since the foregoing dissent was prepared, a concurring opinion has been written by Justice Goss for the conceded purpose of discussing the dissenting opinion. This procedure is, to say the least, somewhat anomalous, as I believe the books will be searched in vain for another instance where a majority

has found it necessary to defend its decision, and I sincerely hope that this procedure will not be deemed a precedent to be followed by this court in the future. This extraordinary proceeding is of itself an admission of the weakness of the conclusions reached by the majority members, and a confession on their part that their former opinion needs defense. I shall not attempt to go into any extended discussion of the concurring opinion, as the opinion itself is a sufficient refutation of its contents; and I would not enter into any discussion thereof whatever, were it not for the fact that some new and novel propositions are asserted therein.

The concurring opinion expresses its approval of the case of McDonald v. Beatty, cited in the dissenting opinion, and disclaims any intention to overrule the holding in that case. It is inconceivable how this can be seriously asserted. The principle announced in McDonald v. Beatty was *that a junior or subsequent redemptioner could in no manner question the regularity of a redemption, but that the only person who could successfully question the regularity thereof was the holder of the certificate of purchase.* The doctrine promulgated by the majority in this case is directly to the contrary, still it is asserted by Justice Goss that McDonald v. Beatty is not departed from.

The discussion in the concurring opinion of the present laws in this state regarding redemptions, and the so-called statute of limitations formerly existing in this state, identical with that construed by the supreme court of South Dakota in the case of Spackman v. Gross, indicates not only failure to distinguish the difference existing between the statutes in question, but also a failure to comprehend between the different principles which are involved in the two cases. Under the law construed in Spackman v. Gross, the rights of two classes were involved; first, those of the holder of the certificate; and second, those of subsequent redemptioners, because in the absence of a redemption any person (entitled to do so) might redeem within one year from the date of sale, but a redemption reduced the period in which a subsequent redemptioner might redeem to sixty days after such former redemption was made. Therefore, a redemption made during the year of redemption would limit and restrict the rights of other redemptioners. Under the laws now existing in this state a redemption can in no manner adversely affect the rights of a subsequent redemptioner. Un-

30 N. D.—40.

der no circumstances is the period of redemption limited or restricted by such redemption,—and under certain circumstances the period may be extended; hence, a radically different condition exists. There was a reason for holding as was done by the South Dakota court, that where a party insists upon invoking a short time statute of limitations, and depriving another of a right which he otherwise would have had, that then the party seeking to invoke the statute must show a strict compliance with the terms thereof; but under the present laws of this state that condition does not exist,—and cannot exist as the rights of a subsequent redemptioner cannot possibly be limited or restricted by a former redemption; hence, it is perfectly logical to hold as was done by this court in McDonald v. Beatty, that a subsequent redemptioner is not concerned in, and cannot question, the regularity of a former redemption, and that the only persons concerned are the redemptioner and the holder of the certificate of purchase. In the case of Spackman v. Gross, Johnson's right to redeem still existed, unless it had been terminated by the prior redemption made by Spackman. In the present case exactly the contrary condition exists,—Fox concededly has no right to redeem unless he predicates such right on the redemption formerly made by Nelson. The contentions of the two parties are diametrically opposite.

The concurring opinion, in discussing the question of estoppel, presents this remarkable proposition: "Can a redemptioner be estopped from exercising his right of redemption, forsooth, because not a lawyer, he made a misstatement concerning the tenure of his holding, the legal effect of what in law constituted his mortgage?" The very assertion that Fox, the president of a National Bank, did not know the difference between a case where he had actual ownership of land, and others where he held it as security for payment of debts due him or his bank, is so absurd that it requires no answer. It is also asserted thát Nelson suffered no injury. This is equally untenable. It should be remembered that Nelson owned all the encumbrances against the land, and that if Fox held as owner, then it was not necessary for Nelson to file any affidavit of the various liens he held, as a redemption by Fox as owner would merely constitute payment of the foreclosure certificate. The trial court found that the Advance Thresher Company's mortgage had not been paid, and I am satisfied that this finding is

entirely sustained by the evidence, although the testimony on this feature of the case is in such condition that it is impossible for anyone to determine the exact amount remaining unpaid; but Nelson contends that the amount is somewhere about $1,100. This amount Nelson is precluded from recovering. The trial court found it unnecessary to determine the amount due on this mortgage, as it held that Fox was not entitled to redeem. If the majority desired to do equity, they should at least return the case to the district court and permit the amount due on this mortgage to be determined, and compel Fox to pay this as a part of his redemption. The concurring opinion says that this property was worth upwards of $5,000. There is absolutely no testimony as to the value of the property in the record; hence, this is a mere conjecture on the part of the writer of the concurring opinion, and not based upon any evidence in the case.

The concurring opinion also intimates that an unscrupulous redemptioner might suppress the notice of redemption, and intentionally withhold it from record. How could it possibly injure a subsequent redemptioner? Such redemptioner would have at least as long a time in which to redeem as though the former redemption had not been made. And the law has prescribed exactly what he must pay to effect a redemption, and has designated the sheriff of the county as the agent for the person entitled to receive the redemption money. This argument in the concurring opinion is so fallacious that a mere statement of the proposition demonstrates its unsoundness. And in this case it is undisputed that Fox had actual notice of the redemption made by Nelson.

The concurring opinion speaks of an "unscrupulous redemptioner," and a "forfeiture," and refers to other matters which can have no application in this case. The only rights forfeited in this case are those of Nelson. Under the holding of the majority, Fox is given an opportunity to redeem if he sees fit to do so; but if for some reason he does not care to redeem, there is no way whereby the defendant can compel him to do so. Plaintiff has not placed one cent where defendant can get it. The decree is one-sided. The option is given to the plaintiff. Not only is this true, but Fox is also relieved from the payment of interest. It is conceded that he has never deposited the money in a bank for the use of the defendant, nor paid the same into court, and yet the majority says, not only that plaintiff shall be

permitted to redeem, but that, although he has had the use and bene-
fit of the money at all times, still plaintiff shall not be required to
pay interest. It should be remembered that under the theory of the
plaintiff, the amount required to redeem in this case was not uncertain,
but consisted of a definite and fixed amount which he claims to have
tendered; hence, even under the common law requirement referred to
in Brown v. Smith, 13 N. D. 580, 102 N. W. 171, and contended for
by Justice Goss in his concurring opinion, plaintiff should be required
to pay interest. Shank v. Groff, 45 W. Va. 543, 32 S. E. 248; Shields
v. Lozear, 22 N. J. Eq. 447; Daughdrill v. Sweeney, 41 Ala. 310;
Clark v. Neumann, 56 Neb. 374, 76 N. W. 892.

The concurring opinion also criticizes the citation of Brown v.
Smith, supra, in the dissenting opinion, and says that that case was
an action at law. It will be observed, however, that the holding in
that case is based solely upon a construction of the statutes of this
state relative to the sufficiency of a tender to effect a redemption from
a chattel foreclosure sale. Will it be contended that a statute means
one thing in an action at law, and another in an equitable action?
A court of equity is not superior to law, but is a creature of the law,
and just as much subject to and bound by the laws of this state as a
court of law. One of the maxims of equity is that "equity follows the
law."

I am compelled to adhere to the views expressed in my former dis-
sent, as well as those expressed above, in all of which Chief Justice
FISK fully concurs. .