## SPACKMAN v. GROSS, Sheriff.

Code Civ. Proc. § 463, providing that a question of fact decided upon a trial by the court may be reviewed when exceptions to the findings of fact have been taken, does not entitle the Supreme Court to determine an issue upon the weight of evidence.

Under Code Civ. Proc. § 378, requiring notice of redemption from a mortgage foreclosure to be given the sheriff by a redemptioner, and that a duplicate thereof be filed with the register of deeds, no certificate of redemption is required or authorized to be made to a redemptioner, and a certificate issued to him by the sheriff can be given no force or effect whatever, and its record and indexing with the register of deeds is likewise unauthorized, and cannot be deemed a substantial compliance or any compliance, with the requirement that a duplicate notice of redemption be filed.

Under Code Civ. Proc. § 378, requiring notice of redemption from a mortgage foreclosure to be given the sheriff by a redemptioner, and that a duplicate thereof be filed with the register of deeds, the recording of a notice of redemption is unauthorized, and, unless the notice is filed, is not a substantial compliance with that section, so as to cut off the right of redemption by another redemptioner after 60 days, under section 377.

In the sense of a statute requiring the "filing" of a paper, it is filed when delivered to and received by the proper officer to be kept on "file." The word carries with it the idea of permanent preservation of the thing so delivered and received that it may become a part of the public record.

(Opinion filed, March 30, 1910.)

Appeal from Circuit Court, Day County. Hon. J. H. McCoy, Judge.

Mandamus by H. L. Spackman against Philip A. Gross, as sheriff of Day County. From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Affirmed.

*Bouck & McCarthy* and *Howard Babcock,* for appellant. *Sears & Potter,* for respondent.

SMITH, J. This is a proceeding by mandamus to compel the defendant as sheriff of Day county to execute to plaintiff a sheriff's deed of a certain quarter section of farm land in said county. Issues of fact were presented by the return to the writ, which were duly tried by the court upon evidence submitted by both parties, and the court thereupon made its findings of fact and conclusions of law, which show substantially the following facts: John M. O. Scaarhaug was owner of this land on Decem-

ber 15, 1903, and on that day executed and delivered to the Sisseton Loan & Title Company a mortgage to secure payment of the sum of $210, which mortgage was recorded on the 3d day of March, 1904. On January 9, 1905, Scaarhaug mortgaged the same lands to Peter C. Johnson to secure the sum of $1,561.65, which mortgage was recorded on January 11, 1905. On November 15, 1906, Scaarhaug mortgaged the said lands to the plaintiff, H. L. Spackman, to secure the sum of $212, which mortgage was recorded on November 22, 1906. On December 29, 1906, the mortgage to the Sisseton Loan & Title Company was foreclosed by advertisement, and the premises sold by the defendant, as sheriff of said Day county, to the mortgagee, the Sisseton Loan & Title Company, for the sum of $303.87, and a sheriff's certificate of sale duly issued to the said purchaser, which was recorded in the office of the register of deeds on January 8, 1907. On January 29, 1907, plaintiff, H. L. Spackman, redeemed the lands from the sale to the Sisseton Loan & Title Company, by paying to defendant, the sheriff of Day county, the sum of $305.37, being the amount of said sale and interest to that date, and at the same time served upon the defendant as sheriff a notice of redemption, together with a copy of the mortgage under which Spackman claimed to redeem, the record thereof, certified by the register of deeds of said county, and also an affidavit by said Spackman, showing the amount then actually due on the lien. A duplicate copy of such notice, mortgage, record thereof, and affidavit were at the same time delivered to and filed with the register of deeds of said county and his fees therefor paid. The defendant as sheriff thereupon executed to said plaintiff, Spackman, a certificate of redemption, which was duly recorded in the office of the register of deeds on the same day. The notice of redemption and certificate of redemption were recorded at length by the register of deeds, and entered in the numerical index kept in his office. On December 28, 1907, one year less a day from the day of the foreclosure sale under the Sisseton Loan & Title Company's mortgage, Johnson, as the holder of the second mortgage upon, the said lands, attempted to redeem the land from the redemption made by Spackman on January 29, 1907, and served upon the

defendant as sheriff the notice of redemption, affidavit, and record of his mortgage, and a check for $325. The check for the redemption money was mailed to Spackman at Sisseton who refused to accept the same, or in any way to recognize the right of Johnson to redeem, and assigned as his reason therefor that such attempted redemption was not made within 60 days after the date of Spackman's redemption. On January 17, 1908, plaintiff, Spackman, presented to defendant, as sheriff of Day county, a sheriff's deed to himself as redemptioner, and demanded the execution thereof, under his redemption of the premises made on January 29, 1907. The sheriff refused to execute said deed, and this action was commenced to compel its execution. After the year of redemption had expired, and about the time of the commencement of this action, the notice of redemption and the certificate of redemption issued to Spackman on the 29th day of January, 1907, were found in the possession of the First National Bank of Sisseton. It is contended by the plaintiff that said papers reached the First National Bank of Sisseton by some unauthorized act of the register of deeds. There is no material conflict of evidence except as to this one fact. Upon this issue of fact the court found that: "The said plaintiff did on said 29th day of January, 1907, cause the said notice of redemption to be recorded in the said office of the riegister of deeds of Day county, and on the next day, the 30th day of January, 1907, did withdraw said notice of redemption from the office of said register of deeds, and thereafter the same was not in the custody or in the office of the said register of deeds, the same having remained in its custody only during the days of January 29, and 30, 1907."

Upon this appeal appellant contends: First, that the evidence is insufficient to sustain the finding of the trial court that the plaintiff withdrew the said notice of redemption from the office of the register of deeds, and that the same was not thereafter in the office or in the custody of the said register of deeds; second, that it is not necessary, as a matter of law, that the notice of redemption of plaintiff, or his certificate of redemption, should remain in the custody and in the office of the register of deeds of Day county, because the record thereof at length in the register of deeds of-

fice and the plaintiff's notice of redemption to the sheriff were sufficient as a matter of law, even though the plaintiff had withdrawn the notice and certificate from the office of the register of deeds; third, that a valid redemption was not made by Johnson for the reason that he did not serve his notice of redemption, and pay the money necessary to redeem, within 60 days after plaintiff's redemption.

Upon the question of the withdrawal of the notice and certificate of redemption by plaintiff from the register of deeds office in Day county there was a direct conflict in the evidence. If the testimony of the plaintiff and his attorney Howard Babcock is to be accepted as true, it would be absolutely certain that the withdrawal of the notice and certificate from the register of deeds office was wholly without the knowledge, consent, or procurement of the plaintiff. On the other hand, if the testimony of Mr. Stearns, the register of deeds, who received and recorded the notice and certificate is to be believed, then the withdrawal of these papers was by direction of the plaintiff. It is conceded that the plaintiff's notice and certificate of redemption were found in the First National Bank of Sisseton with the mortgage which the Scaarhaugs had theretofore given to the plaintiff, and no explanation whatever appears in the record as to the manner in which said First National Bank came into possession of these papers. It does appear, however, that the plaintiff, Spackman, had a safety deposit box in said bank, in which he kept his private papers. The notice and certificate of redemption were produced by the bank at the request of Mr. Bouck, one of appellant's counsel, about the time this action was begun, but the record is silent as to whether the same came from the safety deposit vault rented by Spackman; the only explanation being that an officer of the bank, Mr. Morris, "seemed to have all the papers there."

An extended review of the evidence would be of no value in the application of the legal principles involved in determining the sufficiency of the evidence upon a review of findings of fact. The precise question here is as to the extent and character of the review in this court of the evidence upon exceptions to the findings of the trial court. Section 463, Code Civ. Proc., provides that:

"Any question of fact or of law decided upon trials by the court or by referee, may be reviewed when exceptions to the findings of fact have been duly taken by either party and returned." This provision was first considered by this court in Randall v. Burke Township, 4 S. D. 337, 57 N. W. 4. It is there stated that this chapter was copied from the statutes of Wisconsin. The Supreme Court of that state, before our adoption of their statute, had held that under this statute it became the duty of the court "to examine the testimony and to decide questions of fact according to the weight of the evidence." The Wisconsin statute was first considered by that court in Snyder v. Wright, 13 Wis. 689, and was severely criticised by Dixon, C. J., who says: "By it the court of last resort is in a great measure deprived of the opportunity of scrutinizing the interest, motives, inclination, and prejudices of the witnesses, their means of obtaining correct information, and the use they have made of them, their powers of perceiving facts, the attention which they gave, and their capacity for remembering and stating them. The opportunity of observing their manner and deportment, the effect of a cross-examination, and many other circumstances which are often of quite as much importance in ascertaining the truth as the answers themselves, are wholly lost. Denied these advantages, the court is compelled to decide upon the answers alone, and give its opinion against that of a court possessing them. Will any one say that such a mode of trying facts is the best and most satisfactory, or that it will not unavoidably lead to many erroneous and unjust conclusions? We think not. It seems to us that all must concede that such will be the result."

In Randall v. Burke Township, supra, Justice Corson, commenting on the decision of that court in Fisher v. Trust Co., 21 Wis. 73, says: "The rule laid down by Mr. Justice Cole is probably a little too broadly stated, as now understood by that court. It will be noticed that the learned judge in that case used the language 'to decide questions of fact according to the weight of the evidence.' This is not strictly correct, as this court will not decide the case upon the weight of evidence, as a trial court may do, but will only reverse the decision of the trial court where there is a clear

preponderance of evidence against the decision of the court below. The presumption is in favor of the decision of the trial court upon the weight of evidence, which this court will respect, and therefore it is only when this court finds there is a clear preponderance of evidence against such a decision that the presumption above stated will be overcome." The rule laid down by Judge Corson was approved in Webster v. White, 8 S. D. 479, 66 N. W. 1145, and again in Sands v. Cruikshank, 15 S. D. 142, 87 N. W. 589, where it is said: "The findings of a trial court on disputed questions of fact are always presumptively right, and, though under our statute not as controlling upon this court as the verdict of a jury, must stand unless the evidence clearly preponderates against them. * * * Indeed, the finding of the court upon this issue as to the discovery must, we think, have been controlled by its decision as to the credibility of the witnesses—especially those testifying on behalf of the defendants. Thus the case is peculiarly within the reason of the universal rule that the credibility of witnesses is a question for the trial judge or jury. If, however, we were to assume that all of the defendants' witnesses were entitled to entire credit for truthfulness, we could not say, in view of the inferences which might be fairly drawn from all the evidence, that there is a clear preponderance against the findings." In Hulst v. Benevolent Hall Association, 9 S. D. 144, 68 N. W. 200, this court said: "It was incumbent upon plaintiffs to show that Smith had in good faith intended to comply, and had in fact substantially complied with his contract. The question of his good faith and intentions was one to be determined from his conduct, viewed in the light of all the attending circumstances—a question of fact peculiarly within the province of a jury or trial court. The referee, with the witnesses before him, after a thorough investigation of all the facts and circumstances, has found against the plaintiffs upon this material and vital issue. This court cannot disturb his findings."

In Tyler v. Haggart, 19 S. D. 167, 102 N. W. 682, it is said: "In view of the fact, therefore, that the learned circuit judge who tried this case, heard all of the evidence, and had an opportunity to observe the demeanor of the witnesses, their manner of

testifying, and to judge of the credit to be given their evidence, found the facts in favor of the defendant upon what seems to us, upon examination, evidence that fully justified the findings, we are clearly of the opinion that the trial court erred in granting a new trial in the case." And in Peever Mercantile Co. v. State Mut. Fire Ass'n, 23 S. D. 1, 119 N. W. 1008, this court said: "It is contended by the defendant that the court erred in not finding that the notice set out in defendant's answer was forwarded with the renewal policy; but, as the evidence was conflicting upon that issue, we are not able to say that there was a preponderance of the evidence against the finding of the court in favor of the plaintiff." It is clear from the language of these decisions that this court, reviewing the evidence upon an exception to the findings of a trial court or referee, does not try the issue anew and determine it upon the preponderance of the naked evidence as set out in the record, which lacks those most important aids to the ascertainment of the truth, which are so clearly set forth by Justice Dixon in Snyder v. Wright, supra. If any doubt ever existed as to this view of the law, it may be deemed to have been long settled in this state by the case of Grewing v. Minneapolis T. M. Co., 12 S. D. 128, 80 N. W. 176, which clearly states the rule: "Defendant did not surrender the old notes, or release the first chattel mortgage, and it is evidence that it did not intend to do so, when the new notes and mortgages were executed. Both of the plaintiffs testified positively that defendant's agent promised to do so. Upon this issue of fact the trial judge found for the plaintiffs. Concerning such issue, there is a direct conflict in the evidence. The trial judge saw the witnesses. He was at liberty to believe the plaintiffs, although they were outnumbered by the witnesses for defendant, and this court cannot disturb his findings. The credibility of witnesses is always for the trial court or jury." The rule thus stated is decisive of this question in this case. We certainly cannot say in this case that the finding of the trial court is clearly against the preponderance of the evidence because that preponderance may have depended and probably was made largely upon the credibility of the witnesses.

The provisions of the North Dakota statutes as to redemp-

tions from foreclosure sales, which are construed in State v. O'Connor, 6 N. D. 285, 69 N. W. 692, are identical with our own. On rehearing, that court, adhering to its former decision, states its conclusions in language which meets our entire approval. "The Legislature has full control over the subject of redemption from execution and mortgage sales. It may declare that all rights shall be divested by the sale, or it may accord to the parties interested in the property any indulgence which appears to it to be wise. The right to redeem after sale is a matter of favor, and the lawmaking power may prescribe the terms on which such privilege shall be enjoyed. It may declare that in a certain contingency the redemption must be made within another prescribed period. This is precisely what our statute has done. Nor have we any right to overthrow the express provisions of the redemption law because to us it may seem to be an impolitic enactment. If any redemptioner suffers loss, it is because of inattention to his own affairs. The meaning of the statute is as plain as the use of language can make it. It declares that, while all parties shall have a full year to redeem from the purchaser, and while the judgment debtor or mortgagor shall have the same period to redeem from any one, a redemptioner shall have only 60 days after the last preceding redemption to redeem from another redemptioner. It notifies the redemptioner that one who takes a lien subject to such redemptioner's lien has the right to redeem from the purchaser, and that after such redemption the time for redemption by a prior incumbrancer is limited to 60 days. It therefore informs him that there is a possibility of a redemption by later incumbrancers, and that he must govern his conduct accordingly. The statute requires a notice of redemption by such later incumbrancer (as well as of all other redemptions) to be filed in a public office and made a public record. Section 5543, Rev. Codes. The public notice of a redeption which a redemptioner receives as to a redemption by a subsequent incumbrancer is the only public notice which he is given of a redemption by a prior incumbrancer."

Under our statute the right of redemption is conferred only on two classes of persons: First, the judgment debtor and his

successor in interest; second, creditors, having a lien by judgment or mortgage on the property sold, etc., who are called redemptioners. The method of procedure by which a redemption may be effected by the debtor and redemptioner, respectively, are governed by separate and distinct sections of the Code. The redemptioner must proceed under section 378, which is as follows: "Written notice of redemption must be given to the sheriff, and a duplicate filed with the register of deeds of the county, and if any taxes or assessments are paid by the redemptioner, or if he has or acquires any lien other than that upon which the redemption was made, notice thereof must in like manner be given to the sheriff, and filed with the register of deeds; and if such notice be not filed, the property may be redeemed without paying such tax assessment or lien." The debtor or his successor in interest must proceed under section 380, which is as follows: "If the debtor redeem, he must make the same payments as are required to effect a redemption by a redemptioner. If the debtor redeem, the effect of the sale is terminated, and he is restored to his estate. Upon a redemption by the debtor, the person to whom the payment is made must execute and deliver to him a certificate of redemption, acknowledged or proved before an officer authorized to take acknowledgments of conveyances of real property. Such certificate must be filed and recorded in the office of the register of deeds of the county in which the property is situated, and the register of deeds must note the record thereof, in the margin of the record of the certificate of sale." Three things only are provided for by section 378, as to a redemptioner , viz.: (1) Payment of the redemption money; (2) service of a notice of redemption on the sheriff; (3) filing of a duplicate of the notice of the redemption with the register of deeds of the county. No certificate of redemption is authorized or required to be made to a redemptioner. The debtor, on the other hand, is not required to serve or file any notice of redemption. But he must make the same payment as a redemptioner; the person to whom payment is made must execute, acknowledge, and deliver to him a certificate of redemption, which must be filed and recorded in the office of the register of deeds, and the register of deeds must note the

record thereof in the margin of the record of the certificate of sale.

It seems perfectly clear to us that the certificate of redemption issued to appellant, Spackman, as redemptioner, by the sheriff, was wholly unauthorized by law, and can be given no force or effect whatsoever, and that its record and indexing in the office of the register of deeds was likewise unauthorized, and could not of itself be deemed a substantial compliance, or any compliance whatever, with the law which requires a redemptioner to file his notice of redemption in the office of the register of deeds. Chapin v. Kingsbury, 135 Mass. 580. It will also be observed that section 378 above quoted does not provide for recording a notice of redemption, but only that it shall be filed. It is equally clear, therefore, that the recording of the notice of redemption was unauthorized, and, unless the notice was filed, is no substantial compliance with the statute. Chapin v. Kingsbury, supra. The record itself cannot be deemed a sufficient notice. Nor is that view in conflict with the case of Willis v. Jelinck, 27 Minn. 18, 6 N. W. 373. That court says: "The statute which requires notice to redeem to be filed with the register of deeds where the mortgage is recorded is sufficiently complied with when such notice is left in the office of such officer and is thereupon by the register of deeds recorded and indexed." The question presented here is whether appellant's notice of redemption was ever "filed" so as to become constructive notice to other redemptioners, and to require them to redeem within 60 days or lose their right to redeem. That a filing of the notice of redemption in the register of deeds office and its subsequent removal from the files by the wrongful and unauthorized act of the register would not affect appellant's rights is a doctrine so well settled by the decisions of this court that citations are unnecessary. Schouweiler v. McCaull et al., 18 S. D. 70, 99 N. W. 95. But when a paper is required to be filed which the law intends as a protection to the rights of the person filing it, or as a notice which will operate as a limitation upon the rights of others as against the person filing it, an altogether different question is presented. In the latter case the law requires a strict compliance on the part of the person whose duty it is to

file the required notice. The notice to be filed by a redemptioner is for the benefit of the person filing it, as its filing is the beginning of the brief period of limitations, of which he may take advantage as against other redemptioners. But under this statute the redemption and the filing of the notice of redemption are distinct acts. As against the person from whom the redemption is made no notice is necessary. · The notice is only operative and necessary as against other redemptioners, and . their right to redeem can be barred only by filing the notice of redemption as required by the statute. The failure to file the notice of redemption does not render the redemption itself irregular or illegal. It merely leaves the rights of other redemptioners unaffected. It does not extend the limitations of 60 days, because that period begins only when the notice is filed, and for that reason the rule announced in Trenery v. Am. Mortg. Co., 11 S. D. 506, 78 N. W. 991, has no application. There the statute specifically fixed the day of the sale as the beginning of the year of redemption, and the running of the statute did not depend on the giving of a notice by a redemptioner.

The only question raised by appellant as to the right of Johnson to redeem, or the regularity of his redemption, is that it was not asserted within 60 days from the date of appellant's redemption. But this contention cannot be sustained, as we have seen, for the reason that the 60-day limitation would not commence to run on the day of Spackman's redemption, but from the filing of the notice of redemption in the register's office. Johnson had the right to redeem at any time within the year of redemption, unless such right became barred by the filing of the notice of redemption, and the expiration of the 60-day limitation. What constituted a filing of the notice of redemption required by section 378, Code Civ. Proc.? The trial court found under the evidence that the "plaintiff did, on said 29th day of January, 1907, cause the . said notice of redemption to be recorded in the said office of the register of deeds of Day county, and on the next day, towit, the 30th day of January, 1907, did withdraw said notice of redemption from the office of the register of deeds and thereafter the same was not within the custody nor in the office of the said register

of deeds; the same having remained in his custody only during the 29th and 30th days of January, 1907." This finding we cannot disturb, as being against the preponderance of the evidence. Bouvier says: "In the sense of a statute requiring the filing of a paper or document, it is filed when delivered to and received by the proper officer to be kept on file. The word carried with it the idea of permanent preservation of the thing so delivered and received, that it may become a part of the public record." Webster, quoting Burrill, says: "To file a paper on the part of a party is to place it in the official custody of the clerk. To file on the part of the clerk is to endorse upon the paper the date of its reception, and to retain it in his office, subject to inspection by whomsoever it may concern."

Under the Massachusetts law, a married woman doing business on her own account, to exempt her property from her husband's debts, was required to file a certificate showing certain facts, in the office of the city or town clerk. In the case of Chapin v. Kingsbury, 135 Mass. 580, that court says: "In the case at bar, the plaintiff, on August 19, 1879, took to the town clerk a certificate to be recorded, and, as she testified, 'immediately after said paper had been recorded by the town clerk, it was returned to her, and had remained ever since in her possession.' We are of opinion that this was not a compliance with the statute. The object of the statute is to give notice to persons dealing with the husband or wife, and to afford them the means of ascertaining whether the business carried on is that of the husband or of his wife. The direction that the certificate shall be filed in the clerk's office imports that it is to be placed permanently on the files of the clerk, so that any person interested may refer to it. Recording it is not equivalent to filing it. The statute contains no provision for recording such certificates. Any person interested would naturally look to the files of the clerk to see if any certificate had been filed; he is not required to examine the town records for a copy of a certificate, which has no proper place there." To the same effect are Wilkinson v. Elliott, 43 Kan. 590, 23 Pac. 614; State v. Chicago & E. I. R. Co., 145 Ind. 229, 43 N. E. 226; Meridian Nat. Bank v. Hoyt Bros. Co., 74 Miss. 221, 21 South. 12, 36

L. R. A. 796; See Beebee v. Morrell, 76 Mich. 114, 42 N. W. 1119; 15 Am. Stat. Rep. 295, and note. There was no filing of the notice of redemption as required by the statute, and for that reason Johnson's right of redemption was not barred.

Appellant, however, contends that Johnson, having treated appellant's redemption as valid by attempting to redeem therefrom, cannot now assert that such redemption is invalid, because the notice of redemption was not filed. But it is not necessary that Johnson contend that the Spackman redemption is invalid, but only that Spackman failed to file the notice required to bar Johnson's right of redemption. For all other purposes Spackman's redemption is perfectly regular and valid.

We find no error in the record, and the order and judgment of the trial court are affirmed.

McCOY, J., not stitting.