BANK OF STEELE, Plaintiff and Appellee,

v.

Ernest R. LANG, Defendant and Appellant.

Civ. No. 11217.

Supreme Court of North Dakota.

Jan. 7, 1987.

Kelsch, Kelsch, Ruff and Austin, Mandan, for plaintiff and appellee; argued by Arlen M. Ruff.

Ernest R. Lang, pro se.

ERICKSTAD, Chief Justice.

Ernest R. Lang appeals from the judgment entered by the District Court of Burleigh County granting the Bank of Steele a money judgment against Lang in default of payment of his promissory note and foreclosing the Bank's security interest in Lang's farm equipment, livestock, crops and proceeds, and also dismissing with prejudice Lang's counterclaims against the Bank for fraud and violation of the corporate farming law, Chapter 10–06, N.D.C.C. We affirm.

On May 11, 1984, Lang executed a promissory note to the Bank of Steele for $140,-000.00. This note renewed Lang's prior debt to the Bank of Steele and also provided Lang with two advances totaling $18,-928.38. To secure payment of Lang's prior debt, the Bank of Steele had perfected a security interest in Lang's farm equipment, livestock, crops and proceeds. As additional collateral for the renewal and advances, Lang gave the Bank of Steele a real estate mortgage on his farmland which was second in priority to the real estate mortgage held by the Bank of North Dakota. The promissory note was due and payable on October 8, 1984.

On May 11, 1984, the Bank of North Dakota, having foreclosed its real estate mortgage on Lang's real estate, apparently purchased Lang's farmland at the sheriff's sale for $100,683.01. Almost one year later, the Bank of North Dakota apparently assigned its sheriff's certificate of sale to the Bank of Steele for $105,648.20.

Lang defaulted on the promissory note due to the Bank of Steele. On April 12, 1985, the Bank of Steele served Lang with a summons and complaint seeking a money judgment on Lang's promissory note and foreclosure of its security interest in Lang's personal property. On July 26, 1985, Lang answered by alleging the confiscatory price defense, Chapter 28–29, N.D.C.C., and also counterclaimed alleging fraud on behalf of the Bank of Steele.

On December 30, 1985, Lang, through counsel, served an amended answer and counterclaim alleging that the amount owed by Lang on the promissory note was offset by his equity in the real estate formerly owned by him and now held by the Bank, and that the Bank was in violation of the corporate farming law. On this same date, Lang filed a demand for jury trial. The demand for jury trial was denied by the district court as untimely.

Trial was held on January 24, 1986, and the trial judge rendered judgment in favor of the Bank of Steele on February 3, 1986. The judgment provided:

"1. That Plaintiff have a money judgment against the Defendant for the sum of $122,794.07, plus interest of $39.24 per day from January 24, 1986.

"2. That the security interest of the Plaintiff in all Defendant's farm equipment, machinery, livestock, crops, supplies and the proceeds and products is hereby foreclosed.

"3. That the Sheriff of Burleigh County, or the sheriff of such other county where any of such collateral may be found, take possession of all such collateral and dispose of said collateral as provided by law, with the net proceeds to be applied on the judgment.

"4. That all counterclaims of the Defendant of fraud by the Plaintiff, violation of Chapter 10–06 N.D.C.C., and for actual and punitive damages are hereby dismissed with prejudice.

"5. That all other counterclaims of the Defendant are hereby dismissed without prejudice.

"6. For costs and disbursements as taxed and allowed in the sum of $151.50."

Lang appeals from that judgment and raises three issues:[1]

---

**1.** In the trial court Lang alleged fraud but offered no evidence to support fraud. On the

Whether or not the trial court erred by continuing to retain jurisdiction on the corporate farming violation when it declined jurisdiction to decide issues raised by Lang concerning title in his former real estate.

Whether or not the Bank of Steele is required by Section 28–24–03, N.D.C.C., to credit Lang with any equity which might exist in his former real estate.

Whether or not the trial court abused its discretion by denying Lang's demand for a jury trial as untimely.

Lang initially argues that the trial court erred in reaching its conclusion that the Bank of Steele was not in violation of the corporate farming law. Lang asserts that the trial court's failure to accept jurisdiction regarding questions of title as to the real estate formerly owned by him precluded the trial judge from rendering judgment on the corporate farming violation.

To establish that the Bank of Steele was in violation of the corporate farming law, Lang attempted to offer in evidence documents relating to questions of title in his former real estate, specifically the affidavit of publication of foreclosure, sheriff's certificate of sale, assignment of the sheriff's certificate, and the sheriff's deed (exhibits 9–12 respectively). The Bank of Steele objected to the introduction of the documents on relevancy grounds and the trial court sustained the objection.

It is well established that the trial court has broad discretion in determining relevancy of proffered evidence. *See* Rule 401, N.D.R.Ev.; *Shark v. Thompson*, 373 N.W.2d 859 (N.D.1985); *Benedict v. St. Luke's Hospitals*, 365 N.W.2d 499 (N.D. 1985). The test for relevancy is whether or not the evidence would reasonably and actually tend to prove or disprove a matter of fact *in issue*. *Shark*, 373 N.W.2d at 865 [emphasis added]. Clearly the trial court has not abused its discretion in excluding evidence as irrelevant where the evidence goes only to issues which are not properly before the court. *Shark*, 373 N.W.2d at 865.

The record indicates that the trial court may have doubted the relevancy of the corporate farming violation; however, the court did allow Lang to introduce some evidence on this issue and unequivocally determined in its conclusions of law that the Bank of Steele was not in violation of the corporate farming law.

We believe that the trial court was not precluded from rendering judgment on the corporate farming issue. The evidence that Lang attempted to introduce could not have affected the trial court's conclusion.

The district court commented at the end of trial that "the bank has the right to invest in property to protect the equity it has as a result of another mortgage." Section 10–06–13(4), N.D.C.C.,[2] permits a cor-

issue of fraud the trial court made finding No. XVI:

"That there was no evidence presented, and the Defendant has therefore failed to prove that the Plaintiff had engaged in any oppressive or fraudulent conduct, either actual or constructive, or that any malice was present in Plaintiff's dealings with the Defendant." He also alleged the confiscatory price defense under Chapter 28–29, N.D.C.C. But his only evidence to support it was the drought conditions in the areas of his land and his lower than average crop yield. The trial court found relative to this defense the following:

"XIV.

"That although the Defendant may have suffered from drought conditions that caused poor yields, no evidence was introduced by the Defendant on his costs of production, and no evidence was introduced on the prices the Defendant had realized for his farm operation

and products, and Defendant failed to prove that prices for farm products in general are confiscatory.

"XV.

"That there was no evidence offered that a delay in granting the Plaintiff judgment would help the Defendant to rehabilitate his farm operation, and further delay would damage the Plaintiff because of continued accrual of interest and continued depreciation of its collateral. Therefore, the Court finds it would not be in the best interest of the litigants to delay these proceedings any further."

2. Section 10–06–13(4), N.D.C.C., reads as follows:

"4. Subject to the divestiture requirements of subsections 5, 6, and 7, a domestic or foreign corporation may acquire farmland or ranchland as security for indebtedness, by process of law in the collection of debts, or by any

poration to "acquire farmland or ranchland as security for indebtedness, by process of law in the collection of debts, or by any procedure for the enforcement of a lien or claim thereon...." No law prohibits a corporation, in protecting its security interest in real property, from purchasing an assignment of the sheriff's certificate of sale to the real property. Section 41–09–47(4), N.D.C.C. [9–501, U.C.C.],[3] permits a secured creditor, whose security encompasses both real and personal property to commence a separate action to proceed independently against the personal collateral. *State Bank of Towner v. Hansen*, 302 N.W.2d 760, 764 (N.D.1981).

█ Lang next contends that the Bank of Steele, as a redemptioner, was required to redeem his foreclosed real estate rather than purchase the Bank of North Dakota's sheriff's certificate of sale. Lang relies upon Section 28–24–03, N.D.C.C.,[4] and *Fox v. Nelson*, 30 N.D. 589, 153 N.W. 395 (1915), for the proposition that the Bank of Steele was required to file a notice of redemption and to credit any equity in his foreclosed farmland against his indebtedness due on the promissory note. Although we agree with the trial court that this issue is not properly before us in this proceeding to secure a judgment on the

note and to foreclose the security interest in the personal property, we will, in the interests of justice, discuss the merits of that issue.

In *Fox v. Nelson, supra,* this Court concluded that a secured lienholder and redemptioner had the right to redeem within an additional 60 days after the one year redemption period where the first redemptioner failed to file the required notices of redemption. In *Fox* this Court said:

"We must remember that the statute in regard to redemptions is not only for the benefit of the lienholder but also for the benefit of the mortgagor, and that the policy of the law and of the statute seems to be to give every encouragement to subsequent lienholders to redeem, and this as much for the benefit of the debtor as of the lienholder. Under the provisions of section 7755 and 7756 of the Compiled Laws of 1913 (sections 7141 and 7142, R.C. 1905), the plaintiff was not required to redeem from the defendant Nelson within the year, since Nelson had not within said yearly period perfected his redemption by filing the duplicate notice thereof with the register of deeds, as required by section 7756 of the Compiled Laws of 1913.

---

procedure for the enforcement of a lien or claim thereon, whether created by mortgage or otherwise."

**3.** Section 41–09–47(4), N.D.C.C., provides as follows:

"4. If the security agreement covers both real and personal property, the secured party may proceed under this part as to the personal property or he may proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of this part do not apply."

**4.** Section 28–24–03, N.D.C.C., reads as follows: *"Redemption by redemptioner—Notice to be recorded.* A redemptioner making redemption shall give a written notice of redemption to the sheriff and shall record a duplicate in the office of the register of deeds of the county where the land is situated. The redemptioner must state in the notice of redemption an amount that the redemptioner will credit on the claim against the debtor on making

redemption. If the amount stated in the notice is less than the amount of the lien under which the redemptioner makes redemption, a later redemptioner may redeem from the earlier redemptioner by paying the amount paid by that redemptioner, together with the amount of any taxes, assessments, utilities, or other items paid by that redemptioner in protection of the title or premises, and interest at the same rate as provided in the original instrument on which the judgment is based, together with the amount stated by the first redemptioner in the notice. The amount stated by a redemptioner in the notice must be treated as a payment of that amount on the indebtedness, and the redemptioner shall immediately endorse that on the evidence of the claim. If the claim is a judgment, the redemptioner shall cause a statement of that amount to be entered by the clerk of court in the judgment docket. That credit is deemed conditional only and must be canceled on proof of a further redemption by the debtor or by a redemptioner having a prior right, without payment of the amount credited."

" 'The notice to be filed by a redemptioner,' says the Supreme Court of South Dakota, in construing a similar statute, 'is for the benefit of the person filing it, as its filing is the beginning of the brief period of limitations, of which he may take advantage, as against other redemptioners. But under this statute the redemption and the filing of the notice of redemption are distinct acts. As against the person from whom the redemption is made, no notice is necessary. The notice is only operative and necessary as against other redemptioners, and their right to redeem can be barred only by filing the notice of redemption, as required by the statute. The failure to file the notice of redemption does not render the redemption itself irregular or illegal. It merely leaves the rights of other redemptioners unaffected. It does not extend the limitations of 60 days, because that period begins only when the notice is filed.' *Spackman v. Gross*, 25 S.D. 244, 126 N.W. 389. This rule is subject, of course to the further condition that, as the first redemption, although irregular, was made within the year, the period of redemption could only be extended 60 days from the end of the year, and the plaintiff would be required to redeem within that period or not at all." 153 N.W. at 397.

This Court in *Fox* clearly states that the notice of redemption in Section 7756 of the Compiled Laws of 1913 [predecessor to Section 28–24–03] "is only operative and necessary as against other redemptioners" and that failing "to file the notice of redemption does not render the redemption itself irregular or illegal" but "merely leaves the rights of other redemptioners unaffected."

Lang, as judgment debtor, is not as defined by Section 28–24–01, N.D.C.C.,[5] a *redemptioner* and therefore he is not entitled to relief under Section 28–24–03. Lang's remedy was to redeem the real estate within the one year period of redemption as provided in Section 28–24–02, N.D.C.C.[6] *See McGee v. Marshall*, 54 N.D. 584, 210 N.W. 521 (1926).

Lang's final contention is that the trial court erred in denying, because untimely, his demand for jury trial. Our standard of review is whether or not the trial court abused its discretion. *Shark, supra*, 373 N.W.2d at 863–64. Lang has not shown that the trial court abused its discretion where the record discloses that Lang's demand for trial by jury was made considerably after the prescribed period of time in Rule 38(b), N.D.R.Civ.P.[7]

■ The Bank of Steele commenced the foreclosure action by summons and com-

5. Section 28–24–01, N.D.C.C., provides as follows:
    "*Who may redeem—Redemptioner.*—Property sold subject to redemption, or any part sold separately, may be redeemed in the manner hereinafter provided, by the following persons or their successors in interest.
    1. The judgment debtor, or his successors in interest; and
    2. A creditor having a lien by judgment, mortgage, or otherwise on the property sold, or on some share or part thereof, subsequent to that on which the property was sold. *The persons mentioned in the second subsection of this section are in this chapter termed redemptioners.*" [Emphasis added.]

6. Section 28–24–02, N.D.C.C., reads as follows:
    "*Payment on and period of redemption.* The judgment debtor or redemptioner may redeem the property from the purchaser within one year (six months in redemptions under subsection 1 of section 32–19.1–04) after the sale on paying the purchaser the amount of

the purchase with interest at the rate provided in the original instrument on which the judgment is based, plus the amount of any insurance premiums, assessments, taxes, utilities, or other items paid by the purchaser in protection of the title or the premises, which the purchaser may have paid after the purchase, and interest at the same rate on that amount, and, if the purchaser is also a creditor having a lien superior to that of the redemptioner other than the judgment under which the purchase was made, the amount of that lien with interest."

7. Rule 38(b), N.D.R.Civ.P. reads as follows:
    "*(b) Demand.* Any party may demand a trial by jury of any issue triable of right by jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party."

plaint dated April 9, 1985, served upon Lang on April 12, 1985. On July 24, 1985, Lang filed his answer and counterclaim dated July 21, 1985, with the district court. The Bank of Steele served its reply to Lang's counterclaim on July 26, 1985. It was not until December 31, 1985, that Lang filed a demand for jury trial. Rule 38(b) provides that a party's demand for a trial by jury be served "not later than 10 days after the service of the last pleading directed to such service." Rule 38(e) provides that "[t]he failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury." Lang waived his right to trial by jury because he failed to file a demand within 10 days after July 26, 1985, the date of the Bank's reply. Lang did not revoke his waiver of trial by jury in his amended answer and counterclaim because "[a] waiver of trial by jury is not revoked by an amendment of a pleading asserting only a claim or defense arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Rule 38(e).

For the reasons stated herein we affirm the judgment of the trial court.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.