The LAND OFFICE COMPANY,
Plaintiff and Appellee,

v.

CLAPP–THOMSSEN CO., Edward D.
Clapp and Frederick H. Clapp,
Defendants and Appellants.

Civ. No. 880282.

Supreme Court of North Dakota.

June 6, 1989.

Nilles, Hansen & Davies, Ltd., Fargo, for plaintiff and appellee; argued by Daniel J. Crothers.

Winthrop & Weinstine, St. Paul, Minn., for defendants and appellants; argued by Jeffrey R. Ansel. Appearance by Julie W. Schnell.

LEVINE, Justice.

The defendants, Clapp–Thomssen Co., Edward D. Clapp, and Frederick H. Clapp, appeal from a district court judgment awarding the Land Office Company $250,-000 plus interest on two promissory notes and dismissing the defendants' counterclaim. We affirm.

In the spring of 1985, Price Development Associates listed four twenty-four unit apartment buildings (apartments) in Grand Forks for sale with Land Office, a real estate brokerage firm located in Fargo. Martin O'Connor, a partner in Price Development and the president of Land Office, contacted Clapp–Thomssen to assist Land Office in brokering the apartments. Land Office provided Clapp–Thomssen with a cash analysis of the apartments for prospective purchasers. That analysis included actual rental income and expenses for 1983 and 1984, projections for the last seven months of 1985, and projections for 1986, 1987, 1988, and 1989. Land Office thereafter provided Clapp–Thomssen with monthly cash flow statements showing the actual income and expenses of the apartments for 1985 and 1986.

No outside purchaser for the apartments was located. Price Development and Edward Clapp, the Vice–President and Secretary of Clapp–Thomssen, executed a purchase agreement in which Clapp agreed to purchase the apartments by satisfying Price Development's existing $2,082,000 mortgage on the apartments with Midwest Federal Savings and Loan of Grand Forks. The Board of Directors of Clapp–Thomssen approved the assignment of Edward Clapp's interest in the apartments to Clapp–Thomssen.

The mortgage was reduced from $2,082,-000 to $1.8 million. Midwest Federal and Clapp–Thomssen agreed that Clapp–Thomssen would satisfy the reduced mortgage with a $50,000 downpayment on December 31, 1986, and a promissory note for the balance secured by a mortgage on the apartments. Clapp–Thomssen agreed to make eleven monthly interest payments with the balance of the principal and interest due on December 31, 1987. According to the defendants, they agreed to the transaction because Land Office misrepresented that the net operating income of the apartments was sufficient to obtain refinancing on the property before the December 1987 payment was due.

As part of the purchase agreement, Clapp agreed to pay Land Office $250,000 in broker's fees. On December 30, 1986, Edward Clapp and Frederick Clapp, individually and on behalf of Clapp–Thomssen, executed two promissory notes totaling $250,000 for the broker's fee.

The promissory notes for the broker's fee were not paid and Land Office commenced this action for breach of contract against the defendants on September 21, 1987. On October 29, 1987, the defendants answered, alleging that Land Office had misrepresented the net operating income of the apartments and had fraudulently induced them to execute the promissory notes. None of the parties demanded a jury trial at that time.

When the defendants were unable to obtain refinancing or to satisfy the $1,750,000

promissory note and mortgage with Midwest Federal, Midwest Federal foreclosed on the apartments, taking title to the property on March 31, 1988. Pursuant to counsels' stipulation permitting the defendants to file a counterclaim, the defendants counterclaimed on May 16, 1988, for $1.75 million for the fair market value of the apartments, alleging actual fraud, constructive fraud, and deceit. The defendants requested a jury trial at that time. Land Office replied, generally denying liability. Land Office also moved to strike the defendants' request for a jury trial. The trial court denied the defendants' request for a jury trial.

After a bench trial, the court found that Land Office was entitled to $250,000 plus interest on the promissory notes and that the defendants had failed to prove by clear and convincing evidence that, within the meaning of Sections 9–10–02, 9–03–08, and 9–03–09, N.D.C.C., they were deceived or induced into buying the apartments or executing the promissory notes for the broker's fee. Concluding that the defendants had failed in their burden of proof, the court also dismissed the defendants' counterclaim.

The defendants contend that they were entitled to a jury trial on the issue of fraud as a matter of right. They argue that, pursuant to Rule 38(b), N.D.R.Civ.P., the last pleading directed to the issue of fraud was Land Office's reply to the counterclaim and that their demand for a jury trial was timely because it was made before that reply. Land Office responds that the defendants waived their right to a jury trial on the issue of fraud by not making a demand in their answer and that that waiver was not revived by their counterclaim. Land Office argues that the defendants were not entitled to a jury trial as a matter of right and that the trial court did not abuse its discretion in denying relief from their waiver under Rule 39(b), N.D.R.Civ.P.

Rule 38, N.D.R.Civ.P., provides, in part:

"*(b) Demand.* Any party may demand a trial by jury of any issue triable of right by jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

\* \* \* \* \* \*

"*(e) Waiver.* The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A waiver of trial by jury is not revoked by an amendment of a pleading asserting only a claim or defense arising out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."

Rule 38, N.D.R.Civ.P., was adopted from Rule 38, F.R.Civ.P., and we therefore may look to interpretations of the federal rule for guidance in construing our rule. *E.g., Shark v. Thompson,* 373 N.W.2d 859 (N.D. 1985).

■ Under Rule 38, F.R.Civ.P., a party automatically waives a jury trial on any issue triable of right by a jury unless an affirmative demand for a jury trial is made no later than ten days after service of the last pleading directed to that issue. 5 J. Moore, Moore's Federal Practice, ¶ 38.39[1] (2d ed. 1988); 9 C. Wright and A. Miller, Federal Practice and Procedure, § 2321 (1971).

■ Once a party waives the right to trial by jury on any issue under Rule 38(b) and (d), F.R.Civ.P., the right to trial by jury on that issue cannot be revived by amending or supplementing a pleading. 9 C. Wright and A. Miller, *supra,* § 2320; 5 J. Moore, *supra,* ¶ 38.39[2]. *See, e.g., Walton v. Eaton Corp.,* 563 F.2d 66 (3rd Cir.1977); *Williams v. Farmers and Merchants Ins. Co.,* 457 F.2d 37 (8th Cir.1972).

■ If new issues are raised by amended or supplemental pleadings, a previously waived right to a jury trial is revived only to the new issues. 9 C. Wright and A. Miller, *supra,* § 2320; 5 J. Moore,

*supra,* ¶ 38.39[2] and 38.41. *See, e.g., First Wis. National Bank of Rice Lake v. Klapmeier,* 526 F.2d 77 (8th Cir.1975); *Walton v. Eaton Corp., supra; Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir.1973); *Williams v. Farmers and Merchants Ins. Co., supra.* Amended or supplemental pleadings raising the same general issues as previous pleadings do not raise "new issues" under Rule 38(b), F.R.Civ.P., even if the amended or supplemental pleadings differ from the earlier pleadings in some respects. *E.g., Cardiac Pacemakers, Inc. v. Coratomic, Inc.,* 702 F.2d 671 (8th Cir.1983); *Walton v. Eaton Corp., supra; Lanza v. Drexel & Co., supra.*

The rationale of *Lanza* is instructive on whether "new issues" are raised by amended or supplemental pleadings. In that case, the plaintiffs, in reliance on financial reports about the BarChris Construction Company, conveyed their shares of stock of the Victor Billard Company to BarChris in exchange for BarChris stock. When BarChris filed for bankruptcy less than a year after the exchange, the plaintiffs sued the former directors and officers of BarChris for fraud under Section 10(b) of the Securities and Exchange Act of 1934. Neither the plaintiffs nor defendant Kircher demanded a jury trial. The plaintiffs subsequently amended their complaint twice, alleging that the defendants had supplied them with a false prospectus and had willfully violated Section 17(a) of the Securities and Exchange Act of 1933. Kircher requested a jury trial after both amendments.

The court concluded that the plaintiffs' amendments did not raise new issues and instead involved one basic issue or general area of dispute: whether the plaintiffs were fraudulently induced by the officers and directors of BarChris to exchange their stock. Because the same conduct and the same allegedly false documents constituted the basis for the plaintiffs' claims, the court held that Kircher's failure to demand a jury trial in his original answer waived his right to a jury trial on all issues relating to that general area of dispute.

■ In this case, the fraud alleged in the defendants' counterclaim rests upon the same conduct as the fraud asserted as an affirmative defense in their answer, *i.e.* Land Office's misrepresentation of the net operating income of the apartments. That misrepresentation is the same "basic issue" or "general area of dispute" as the conduct for which the defendants sought damages in their counterclaim. There is no dispute that the counterclaim involves the same basic issue. Counsel acknowledged as much at a hearing on May 6, 1988, regarding the stipulation permitting the defendants to file their counterclaim, when he said that "the contents of the Counterclaim would not deviate from the issues that will be tried anyway." By not demanding a jury trial in their answer, the defendants waived their right to a jury trial and once waived, that right was not revived by a counterclaim which did not raise "new issues."

We are not persuaded that *Curry v. Pyramid Life Ins. Co.,* 271 F.2d 1 (8th Cir. 1959), *cert. denied,* 361 U.S. 933, 80 S.Ct. 373, 4 L.Ed.2d 355 (1960), requires a different result. In that case, the defendant filed an answer alleging an affirmative defense of fraud in the procurement of an insurance contract. More than a month later, the defendant, with leave of the court, filed a counterclaim seeking rescission of the insurance contract because of fraud. The plaintiff demanded a jury trial in her reply to the counterclaim. The Eighth Circuit Court of Appeals held that the demand was timely because the plaintiff's reply to the counterclaim "was the 'last pleading directed to such (fraud) issue' within the contemplation of Rule 38(b)." *Curry, supra,* 271 F.2d at 5.

Professors Wright and Miller have questioned the application of the "new issues" doctrine in *Curry:*

"It should have been held that the failure to demand a jury [within ten days after the answer was filed] waived jury trial on the issue of fraud set up in the answer and that the subsequent counterclaim, in which this same issue was made the basis for a claim for affirmative relief, did not revive a right to jury already

waived. See note 38 below. [Right to jury trial not revived by previous waiver]." 9 C. Wright and A. Miller, *supra*, § 2320 at 93, fn. 35.

We agree with Professors Wright and Miller that the *Curry* decision is not persuasive because the opinion did not address the previously waived right to a jury trial on the same issue, a principle which has been relied upon in subsequent Eighth Circuit cases. *Cardiac Pacemakers, Inc. v. Coratomic, Inc.*, 702 F.2d 671 (8th Cir. 1983); *First Wis. National Bank of Rice Lake v. Klapmeier*, 526 F.2d 77 (8th Cir. 1975); *Williams v. Farmers and Merchants Ins. Co.*, 457 F.2d 37 (8th Cir.1972).

We also are not persuaded by the defendants' argument that they incurred no damages until Midwest Federal foreclosed on the apartments and they, therefore, could not pursue a claim for damages until then.

▮ It is well established that a party fraudulently induced into entering a contract may either rescind the contract and recover any money paid or property delivered pursuant to the contract, or affirm the contract, take the benefits of it, and recover damages for the injuries sustained because of the misrepresentations. *Guild v. More*, 32 N.D. 432, 155 N.W. 44 (1915); *Beare v. Wright*, 14 N.D. 26, 103 N.W. 632 (1905); *Sonnesyn v. Akin*, 14 N.D. 248, 104 N.W. 1026 (1905). If the contract is affirmed, the measure of damages is the difference between what the property would have been worth if it was as represented and what it was actually worth at the time of the sale. *Guild v. More, supra; Beare v. Wright, supra.* Cf. *Olson v. Fraase*, 421 N.W.2d 820 (N.D.1988) [In order to support a legal action, fraud must have produced an injury or actual damage].

In this case, the defendants did not take steps to rescind the contract when they became aware of the alleged misrepresentations. Instead, they affirmed the contract and took the benefits of it. They, therefore, had an action for damages for the injuries sustained because of the alleged misrepresentations, *i.e.* the difference between what the apartments would have been worth if they were as represented by Land Office and what the apartments were actually worth at the time of sale. The defendants, therefore, had a claim for damages when they answered the complaint, and their argument to the contrary is unpersuasive.[1]

We conclude that no "new issue" was added by the defendants' counterclaim and therefore the waiver of the right to a jury trial on the issue of fraud was not revived by that counterclaim. Consequently, the defendants were not entitled to a jury trial on the issue of fraud as a matter of right.

▮ Pursuant to Rule 39(b), N.D.R. Civ.P., a trial court has broad discretion to grant relief from the waiver of the right to a jury trial, and we will not reverse the denial of a request for a jury trial under Rule 39(b), unless the trial court abused its discretion. *Bank of Steele v. Lang*, 399 N.W.2d 293 (N.D.1987); *Shark v. Thompson*, 373 N.W.2d 859 (N.D.1985). A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably. *Wall v. Pennsylvania Life Ins. Co.*, 274 N.W.2d 208 (N.D.1979).

At a hearing on May 6, 1988, counsel for the parties stipulated that the defendants could file a counterclaim within ten days and that the trial of all of the issues would be on July 5-7, 1988. There was no mention of or request for a jury trial. On May 16, 1988, the counterclaim was filed and the demand for jury trial was first asserted. Land Office resisted the request for a jury trial. Thereafter the trial court denied the request, and the trial was held as scheduled. We conclude that the trial court did not act arbitrarily, unconscionably, or unreasonably in denying the defendants' request for a jury trial when that request was made less than two months before the

---

1. Even if the damages allegedly sustained by the defendants in their counterclaim were a "new issue," the most the defendants would have been entitled to was a jury trial on the issue of damages. *Walton v. Eaton Corp.*, 563 F.2d 66 (3rd Cir.1977). Because the trial court found against the defendants on liability, the question of a jury trial on damages is moot.

time for trial. The trial court therefore did not abuse its discretion.

The defendants also contend that the trial court erred as a matter of law in applying an inappropriate burden of proof to their constructive fraud claim. Relying on *Asleson v. West Branch Land Co.*, 311 N.W.2d 533 (N.D.1981), they argue that once a breach of a fiduciary or confidential duty between the parties to a transaction has been shown, there is a presumption of constructive fraud in the transaction and the burden is on the party gaining an advantage from the transaction to prove that the transaction was conducted in fairness and good faith. *See also Main v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 67 Cal.App.3d 19, 136 Cal.Rptr. 378 (Cal.Ct. App.1977); *Boyd v. Bevilacqua*, 247 Cal. App.2d 272, 55 Cal.Rptr. 610 (Cal.Ct.App. 1967). The defendants argue that the trial court failed to consider that presumption and misapplied the burden of proof when it concluded that they had failed to prove constructive fraud by clear and convincing evidence.

Under Rule 301(a), N.D.R.Ev., "if facts giving rise to a presumption are established by credible evidence, the presumption substitutes for evidence of the existence of the fact presumed until the trier of fact finds from credible evidence that the fact presumed does not exist, in which event the presumption is rebutted and ceases to operate." *See Soby Construction, Inc. v. Skjonsby Truck Line, Inc.*, 275 N.W.2d 336 (N.D.1979), *overruled on other grounds in Shark v. Thompson*, 373 N.W. 2d 859 (N.D.1985). Rule 301, N.D.R.Ev., "operates to 'shift' the original burden of proof to the opponent of the presumption," whereas under Rule 301, F.R.Ev., "a presumption imposes upon its opponent a burden of going forward with evidence to rebut the presumption [and] once this is done, the presumption disappears." Explanatory Note to N.D.R.Ev. 301.

■ Before a presumption arises, the party seeking to rely upon it must prove the requisite foundational facts by credible evidence. *Eddy v. Lee*, 312 N.W.2d 326 (N.D.1981). We therefore consider whether the trial court clearly erred in finding, in effect, that the foundational facts necessary for a presumption of constructive fraud were not established by credible evidence in this case.

■ In *Asleson, supra*, we said that constructive fraud arises from the breach of a duty which is owed ordinarily because of a fiduciary or confidential relationship between the parties. We identified a fiduciary or confidential relationship as "'something approximating business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance he would ordinarily exercise.'" *Asleson, supra*, 311 N.W.2d at 539. A person's implicit faith in another's honesty and integrity is insufficient to establish a fiduciary relationship [*Asleson, supra*]; nor does a fiduciary or confidential relationship ordinarily exist when businesspersons deal with each other at arm's-length. *Russell Land Co. v. Mandan Chrysler–Plymouth*, 377 N.W.2d 549 (N.D. 1985); *see also Coca–Cola Bottling Co. of Elizabethtown v. Coca–Cola Co.*, 696 F.Supp. 57 (D.Del.1988); *Mid–America National Bank of Chicago v. First Savings & Loan Ass'n of South Holland*, 161 Ill. App.3d 531, 113 Ill.Dec. 367, 515 N.E.2d 176 (1987); *Mason v. Salomon*, 62 N.M. 425, 311 P.2d 652 (1957).

■ In this case, the trial court found that Land Office and the defendants were experienced in the area of real estate sales and investments and dealt with each other at arm's-length. Those findings of fact are not clearly erroneous under Rule 52(a), N.D.R.Civ.P., and they indicate that the trial court found no confidential or fiduciary relationship between the defendants. Therefore, there was no presumption of constructive fraud based upon the breach of a fiduciary or confidential duty.

However, there are separate duties in land sales, the breach of which may constitute constructive fraud, even in the absence of a fiduciary or confidential relationship. *Asleson, supra*. In *Holcomb v. Zinke*, 365 N.W.2d 507 (N.D.1985), we said that a seller of real property has a duty to disclose material facts which are known or

should be known to the seller and which would not be discoverable by the buyer's exercise of ordinary care and diligence. In this case, the trial court found that Land Office supplied Clapp–Thomssen with all the financial information from which it could have ascertained the exact net operating income of the apartments prior to the date of closing. That finding is not clearly erroneous under Rule 52(a), N.D.R.Civ.P., and, coupled with the trial court's finding that the parties dealt with each other at arm's-length, may be fairly interpreted as a finding that there was no breach of duty by Land Office to the defendants. We therefore conclude that the trial court, in essence, found that the foundational facts necessary for a presumption of constructive fraud were absent. We conclude these findings were not clearly erroneous and, therefore, the presumption was not applicable.

The district court judgment is affirmed.

ERICKSTAD, C.J., and MESCHKE and GIERKE, JJ., concur.

VANDE WALLE, Justice, dissenting.

Article I, Section 13, of the North Dakota Constitution provides in part that "The right of trial by jury shall be secured to all, and remain inviolate." Procedural rules which implement this constitutional right to trial by jury are obviously necessary. But rigid and slavish adherence to those rules turns the constitutional right into a matter of judicial grace which appears to be contrary to the spirit and intent of our Constitution. On appeal our review should not simply be to seek reasons to justify the denial of trial by jury; rather, if there is any question as to whether or not there has been a proper and timely demand for a jury the presumption should favor the trial by jury.

In this instance the counterclaim, at least for damages, raises what I believe to be a new issue for which the demand for a jury trial was timely made pursuant to Rule 38, N.D.R.Civ.P. The majority opinion, at footnote 1, relying upon *Walton v. Eaton Corp.*, 563 F.2d 66 (3d Cir.1977), dismisses that argument with the conclusion that

"Even if the damages allegedly sustained by the defendants in their counterclaim were a 'new issue,' the most the defendants would have been entitled to was a jury trial on the issue of damages"; and "Because the trial court found against the defendants on liability, the question of a jury trial on damages is moot." *Walton* so concludes, with two of the Circuit Judges concurring in the result and a vigorous dissent by Judge Gibbons. *Walton, supra*, at 75.

More significantly, Rule 39(b), N.D.R. Civ.P., provides:

"Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; *but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.*" [Emphasis supplied.]

A leading commentary discussing this rule, derived from the Federal Rules, states:

"Those courts that have taken a highly restrictive view of the circumstances in which the discretion given by Rule 39(b) will be exercised in favor of allowing a jury trial have reasoned that the power to order trial by jury given them by that rule was not intended to serve as a device to circumvent or bypass the positive action that must be taken under Rule 38 to obtain jury trial. These decisions seem to place the emphasis in the wrong place. Technical insistence upon imposing a penalty for default by denying a jury trial is not in the spirit of the rules. The rules do not limit the court's discretion in ordering a jury in cases in which there would have been a right to jury trial. The court ought to approach each application under Rule 39(b) with an open mind and an eye to the factual situation in that particular case, rather than with a fixed policy against granting the application or even a preconceived notion that applications of this kind are usually to be denied." 9 Wright & Miller, *Federal*

*Practice & Procedure,* § 2334 at 115–116 (1971).

Compare *Cox v. C.H. Masland & Sons, Inc.,* 607 F.2d 138 (5th Cir.1980) [although a judge is not required to allow untimely request for jury trial, court should grant jury trial in absence of strong and compelling reasons to the contrary].

An issue of fraud is one of fact which entitles the party to a trial by jury. E.g., *Benefiet v. Hoiby,* 370 N.W.2d 513 (N.D. 1985). Although I agree the fraud alleged in the answer was essentially the same as that alleged in the counterclaim, once the counterclaim alleging damage for fraud had been allowed and a demand for a jury trial made, a proper application of Rule 39(b) would dictate that a jury trial should have been granted as to all issues.[1] There appears to me to be little purpose to permitting the initial trial only as to damages but denying it as to the issue of fraud, particularly if the issue of damages may be intertwined with that of liability. Cf. *Irgens v. Mobil Oil Corporation,* 442 N.W. 2d 223 (N.D.1989); *Bergquist–Walker Real Est. v. Wm. Clairmont,* 333 N.W.2d 414 (N.D.1983) [where elements of contract closely connected with issue of damages, order for new trial should encompass all issues raised by the pleadings].

The budget of the judicial branch of our government, like those of the other branches, is limited and the costs of trial by jury are substantial. However, a parsimonious refusal to allow a jury trial can only foster the already too common belief that an elitist judiciary believes that only judges are really competent to determine these issues.

I would reverse the judgment and remand for a jury trial on the issues raised in the counterclaim.

---

**1.** There is no indication that the purpose of the counterclaim for damages and the demand for a jury trial was to circumvent Rule 38(b), N.D.R. Civ.P.